UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
 ------------------------------------------------------------------- X

NATANEL CHAIM MARK, Individually and as
Representative of the Estate of Michael Mark
Otniel 132, Israel

CHAVA RACHEL MARK Individually and as personal
representative of TBM, RLM and EBM, minors
Otniel 99, Israel

YISKA MARK, Individually and as Representative of the
Estate of David Shlomo Mark
Otniel 98, Israel

SHIRA HODAIA MARK CHARIF
Otniel 99, Israel

YEHOSHUA MORDECHAI MARK
Otniel 99, Israel

MIRYAM MARK
Otniel 99, Israel

ORIT MARK
Otniel 129, Israel

PDAYA MENACHEM MARK,
Otniel 99, Israel

AYELET HASHACHAR BATT
Hezkiyahu Hamelech 11, Jerusalem, Israel

ARYEH BATT
Hezkiyahu Hamelech 11, Jerusalem, Israel

AVI BATT
Hazait 11, Ofra, Israel

ELISHEVA HIRSCHFELD
Kochav Hashachar, P.O.B. 109, D.N. Mizrach Binyamin,
Israel

ELI M. BOROCHOV
433 Arbuckle Avenue, Cedarhurst, NY 11518

Case no. 19-cv-_____

**COMPLAINT**

RONEN STEVEN BOROCHOV
433 Arbuckle Avenue, Cedarhurst, NY 11518

DEVORA SUE BOROCHOV
433 Arbuckle Avenue, Cedarhurst, NY 11518

SHARI MAYER BOROCHOV
433 Arbuckle Avenue, Cedarhurst, NY 11518

JOSEF S. BOROCHOV
433 Arbuckle Avenue, Cedarhurst, NY 11518

SHIRA NECHAMA BOROCHOV
433 Arbuckle Avenue, Cedarhurst, NY 11518

AVRAHAM M. BOROCHOV
433 Arbuckle Avenue, Cedarhurst, NY 11518

YOAV GOLAN
Tel Hai 22, Kefar Saba, Israel

ROTEM SHOSHANA GOLAN
Tel Hai 22, Kefar Saba, Israel

RAPHAEL GOLAN
Zarhi 56/11, Jerusalem, Israel

YEHUDIT GOLAN
Zarhi 56/11, Jerusalem, Israel

MATAN G GOLAN
Zarhi 56/11, Jerusalem, Israel

YAEL GOLAN INBAR
Zarhi 56/11, Jerusalem, Israel

NADAV GOLAN
Zarhi 56/11, Jerusalem, Israel

SHAI FISHFEDER
Elkalai 2, Kefar Saba, Israel

EFRAT FISHFEDER
Elkalai 2, Kefar Saba, Israel

OHAD FISHFEDER
Elkalai 2, Kefar Saba, Israel

OMER FISHFEDER
Elkalai 2, Kefar Saba, Israel

SHIRI FISHFEDER
Elkalai 2, Kefar Saba, Israel

CICI JACOBSON
Shimoni 8, Rehovot, Israel

EDDY JACOBSON
Shimoni 8, Rehovot, Israel

CHAIM GOLDWATER
Hayahalom 27, Nof Ayalon, Israel

ESTHER GOLDWATER
Hayahalom 27, Nof Ayalon, Israel

SHMUEL GORFINKLE
Aharon Maskin 44, Petah Tikva, Israel

SARA GORFINKLE
Aharon Maskin 44, Petah Tikva, Israel

ESTHER FISHFEDER
Reines 9, Givataim, Israel

-and-

DAVID FISHFEDER
Reines 9, Givataim, Israel

Plaintiffs,

-against-

THE ISLAMIC REPUBLIC OF IRAN
Ministry of Foreign Affairs, Khomeini Ave. United
Nations St., Teheran, Iran;

THE IRANIAN MINISTRY OF INFORMATION AND
SECURITY
Pasdaran Ave., Golestan Yekon, Teheran, Iran

-and-

THE SYRIAN ARAB REPUBLIC
c/o Foreign Minister Walid al-Mualem Ministry of Foreign
Affairs. Shora, Muajireen, Damascus, Syria,

                           Defendants.

------------------------------------------------------------------ X

Plaintiffs, by their counsel, complain of the Defendants, and hereby allege for their Complaint as follows:

## INTRODUCTION

1.       This is a civil action for wrongful death, personal injury and related torts pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, et seq., arising from a heinous terrorist shooting attack carried out by the Hamas terrorist organization on July 1, 2016 on Route 60 near the Otniel community, in Israel, in which U.S. citizen Rabbi Michael Mark was brutally murdered and his wife Chava Mark and two of his children, Padaya Mark, and TBM were severely injured ("Route 60 Terrorist Attack"). This is also a civil action for personal injury and related torts pursuant to the FSIA, 28 U.S.C. § 1602, et seq., arising from a brutal shooting attack carried out by Hamas on November 6, 2015 in Hebron, Israel when U.S. citizen Eli M. Borochov ("Eli") was shot in his thigh and testicles on his way up the steps to Maharat Hamachpela (the cave of Patriarchs) ("Hebron Terrorist Attack").

2.       This is also a civil action for personal injury and related torts pursuant to the FSIA, 28 U.S.C. § 1602, et seq., arising from a cowardly terrorist attack carried out by Hamas on U.S. citizen Yoav Golan ("Yoav") and his wife, Israeli citizen, Rotem Shoshana Golan ("Rotem"), on December 15, 2016 while there were waiting at a bus stop when a motor vehicle ran into them.

While Yoav and Rotem were able to stand up after being intentionally plowed down by a motor vehicle, Yoav was shot at by the Hamas terrorists ("Bus Stop Terrorist Attack"). The Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack were carried out by Hamas using material support and resources provided by defendants the Islamic Republic of Iran and the Syrian Arab Republic.

3.      Decedent Rabbi Michael Mark, was killed in the Route 60 Terrorist Attack as he drove his family in their passenger car and was overtaken by a vehicle containing a Palestinian terrorist cell, armed with an assault rifle. The terrorists fired 25 bullets at close range into the Mark's car. Rabbi Mark was badly hit, lost control of the car which crashed and overturned. He died of the injuries he sustained in the Route 60 Terrorist Attack. Plaintiffs Chava Mark and children Pdaya and TBM were severely injured in the Route 60 Terrorist Attack but survived. Eli Borochov sustained serious physical injuries in the Hebron Terrorist Attack, including to his thigh and testicles. Eli was hospitalized for three days and thereafter confined to his home for two months. Eli missed a semester of college as a result of his injuries from the Hebron Terrorist Attack. Yoav Golan injured his leg and sustained a small break in his shoulder in the Bus Stop Terrorist Attack. Yoav's physical injuries required him to be in a wheelchair for a period of time. Due to the Bus Stop Terrorist Attack, Yoav required psychological treatment. Rotem Golan sustained physical injuries in the Bus Stop Terrorist Attack, including lacerations in her knees and a hamstring injury. Rotem also received psychological treatment due to the Bus Stop Terrorist Attack.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330-1332, 1367, 1605 note, and 1605A(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4) and the rules of pendent venue.

## THE PARTIES

5.      Plaintiff Natanel Mark, individually as the son of Rabbi Michael Mark and as administrator of the estate of decedent, Rabbi Michael Mark, is and was a U.S. citizen domiciled in Israel. Natanel is also the son of Chava Mark and the brother of Pdaya and TBM, who were injured. Rabbi Mark was a U.S. Citizen, domiciled in Israel, the father of ten children and the head of a prestigious religious seminary at the time of his terrorist murder. Plaintiff Chava Rachel Mark at all times relevant hereto is and was a U.S. citizen domiciled in Israel, is the wife of U.S. Citizen decedent Rabbi Michael Mark, and the mother of minor Plaintiffs TBM, RLM and EBM and of non-minor Plaintiffs Shira Hodaia Mark Harif, Netanel Chaim Mark, Yehoshua Mordechai Mark, Miryam Mark, Orit Chaya Mark Ettinger and Pdaya Menachem Mark. Plaintiff Chava Mark was severely injured in the Route 60 Terrorist Attack, her husband was murdered and her two children Pdaya and TBM were injured.

6.      Plaintiff Yiska Mark, administrator of the estate of her husband, David Shlomo Mark is an Israeli citizen domiciled in Israel. Decedent David Shlomo Mark at all times relevant hereto was a U.S. citizen domiciled in Israel, and the child of decedent Michael Mark and Plaintiff Chava Mark. Decedent, David Shlomo was killed in a traffic accident in March 2019. David Shlomo Mark was the son of Plaintiffs Michael Mark and Chava Mark, and the brother of Pdaya and TBM, who were injured.

7.      Plaintiff Shira Mark Charif at all times relevant hereto is and was a U.S. citizen domiciled in Israel, and the daughter of decedent Michael Mark and Plaintiff Chava Mark, and the sister of Pdaya and TBM, who were injured.

8.      Plaintiff Yehoshua Mark at all times relevant hereto is and was a U.S. citizen domiciled in Israel, and the son of decedent Michael Mark and Plaintiff Chava Mark, and the brother of Pdaya and TBM, who were injured.

9.      Plaintiff Miryam Mark at all times relevant hereto is and was a U.S. citizen domiciled in Israel, and the daughter of decedent Michael Mark and Plaintiff Chava Mark, and the sister of Pdaya and TBM, who were injured.

10.     Plaintiff Orit Mark at all times relevant hereto is and was a U.S. citizen domiciled in Israel, and the daughter of decedent Michael Mark and plaintiff Chava Mark, and the sister of Pdaya and TBM, who were injured.

11.     Plaintiff Pdaya Menachem Mark at all times relevant hereto is and was a U.S. citizen domiciled in Israel, and the son of decedent Michael Mark and Plaintiff Chava Mark. Plaintiff Pdaya Mark was severely injured in the Route 60 Terrorist Attack, along with his sister TBM.

12.     Plaintiff EBM at all times relevant hereto is and was a U.S. citizen domiciled in Israel, and the daughter of decedent Michael Mark and Plaintiff Chava Mark, and the sister of Pdaya and TBM, who were injured.

13.     Plaintiff RLM at all times relevant hereto is and was a U.S. citizen domiciled in Israel, and the daughter of decedent Michael Mark and Plaintiff Chava Mark, and the sister of Pdaya and TBM, who were injured.

14.     Plaintiff TBM at all times relevant hereto is and was a U.S. citizen domiciled in Israel, and the daughter of decedent Michael Mark and Plaintiff Chava Mark. TBM was severely injured in the Route 60 Terrorist Attack, along with her brother Pdaya Menachem Mark.

15.     Plaintiff Ayelet Ashchar Batt at all times relevant hereto is and was a U.S. citizen domiciled in Israel, and the mother of Plaintiff Chava Mark, mother-in-law of Michael Mark, deceased, and grandmother of Pdaya and TBM.

16.     Plaintiff Aryeh Batt at all times relevant hereto is and was a U.S. citizen domiciled in Israel, and the brother of Plaintiff Chava Mark, brother-in-law of Michael Mark, deceased, and uncle of Pdaya and TBM.

17.     Plaintiff Avraham Batt at all times relevant hereto is and was a U.S. citizen domiciled in Israel, and the brother of Plaintiff Chava Mark, brother-in-law of Michael Mark, deceased, and uncle of Pdaya and TBM.

18.     Plaintiff Elisheva Hirschfeld at all times relevant hereto is and was a U.S. citizen domiciled in Israel, and the sister of Plaintiff Chava Mark, sister-in-law of Michael Mark, deceased, and uncle of Pdaya and TBM.

19.     Plaintiff Eli M. Borochov at all times relevant hereto is and was a United States citizen domiciled in the U.S. and was injured in the Hebron Terrorist Attack.

20.     Plaintiff Shari Mayer Borochov at all times relevant hereto is and was a United States citizen domiciled in the U.S., and married Eli on August 20, 2019. Plaintiff Ronen Steven Borochov at all times relevant hereto is a U.S. and Israeli citizen domiciled in the U.S., and the father of Eli. Plaintiff Devora Sue Borochov at all times relevant hereto is a U.S. citizen domiciled in the U.S., and the mother of Eli. Josef S. Borochov at all times relevant hereto is a U.S. citizen domiciled in the U.S., and the brother of Eli. Shira Nechama Borochov at all times relevant hereto

is a U.S. citizen domiciled in the U.S., and the sister of Eli. Avraham M. Borochov at all times relevant hereto is a U.S. citizen domiciled in the U.S., and the brother of Eli. Yoav Golan at all times relevant hereto is a U.S. citizen domiciled in Israel, and was injured in the Bus Stop Terrorist Attack. Rotem Shoshana Golan at all times relevant hereto is an Israeli citizen domiciled in Israel, the wife of Yoav and was injured in the Bus Stop Terrorist Attack. Raphael Golan at all times relevant hereto is a British and Israeli citizen domiciled in Israel and is the father of Yoav. Yehudit Golan at all times relevant hereto is a U.S. citizen domiciled in Israel, and is the mother of Yoav.

21.     Matan Golan at all times relevant hereto is a U.S. citizen domiciled in Israel, and is the brother of Yoav. Yael Golan Inbar at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the sister of Yoav.

22.     Nadav Golan at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the brother of Yoav.

23.     Shai Fishfeder at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the father of Rotem. Efrat Fishfeder at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the mother of Rotem. Ohad Fishfeder at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the brother of Rotem.

24.     Omer Fishfeder at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the brother of Rotem.

25.     Shiri Fishfeder at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the sister of Rotem.

26.     Cici Jacobson at all times relevant hereto is a U.S. citizen domiciled in Israel and is the grandmother of Yoav.

27.     Eddy Jacobson at all times relevant hereto is a U.S. citizen domiciled in Israel, and is the grandfather of Yoav.

28.     Chaim Goldwater at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the grandfather of Yoav.

29.     Esther Goldwater at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the grandmother of Yoav.

30.     Shmuel Gorfinkle at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the grandfather of Rotem.

31.     Sara Gorfinkle at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the grandmother of Rotem.

32.     Esther Fishfeder at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the grandmother of Rotem.

33.     David Fishfeder at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the grandfather of Rotem.

34.     Defendant The Islamic Republic of Iran ("Iran") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. § 1603, designated since 1984 as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)). Iran, through its political subdivisions, agencies, instrumentalities, officials, employees and agents, including the Iranian Ministry of Information and Security, provided Hamas with material support and resources, for acts of extrajudicial killing within the meaning of 28 U.S.C. § 1605A(a)(1), including the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack, and performed other actions that enabled, facilitated and caused the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack and harm to

the Plaintiffs herein. Defendant The Iranian Ministry of Information and Security ("MOIS") is the Iranian intelligence service. Within the scope of its agency and office, MOIS provided material support and resources for the commission of acts of extrajudicial killing, including the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack, and performed other actions, that enabled, facilitated and caused the Terrorist Attack the Hebron Terrorist Attack and the Bus Stop Terrorist Attack and harm to the Plaintiffs herein.

35.    Defendant The Syrian Arab Republic (hereinafter "Syria") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. § 1603, designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)). Syria provided Hamas with material support and resources for the commission of acts of extrajudicial killing within the meaning of 28 U.S.C. § 1605A(a)(1), including the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack and performed other actions that enabled, facilitated and caused the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack and harm to the Plaintiffs herein.

## UNDERLYING FACTS

### Hamas

36.    Hamas is a radical terrorist organization that was established by Islamic militants in 1987. It is the Palestinian branch of the extremist Muslim Brotherhood organization. Hamas views Israel and the United States as the greatest enemies of Islam. Hamas opposes a peaceful resolution of the Middle East conflict. The Hamas charter, first published in 1988, states that "There is no solution to the Palestinian problem except by Jihad," or violent struggle against Israel and the West. Hamas's openly-declared goal is the creation of an Islamic state in the territory of

Israel, the West Bank and the Gaza Strip, and the destruction of the State of Israel and the murder or expulsion of its Jewish residents. Hamas seeks to achieve this goal by carrying out terrorist attacks against Jewish civilians in Israel, the West Bank and the Gaza Strip. Hamas proudly and openly acknowledges that it uses terrorism to achieve its political goals. Hamas employs extremist violence against civilian targets in an effort to coerce, intimidate and influence government decision-makers and the public in Israel to accept Hamas's demands.

37.     Between the time of its founding and September 4, 1997 (and until the present day), Hamas has carried out thousands of terrorist attacks in Israel, the West Bank and the Gaza Strip, in which scores of Israeli and U.S. citizens, as well as the nationals of many other countries were murdered and thousands more wounded.

38.     Between the time of its founding and September 4, 1997, Hamas's policy and practice of carrying out terrorist attacks was and is notorious and well known to the public at large, including the defendants.

39.     Between 1999 and September 4, 1997, the courts of the United States, including this Court, published a number of decisions finding that Hamas was responsible for terrorist attacks in which American and Israeli citizens were killed or injured. Hamas has been designated by the United States Government as a Specially Designated Terrorist ("SDT") continuously since 1995, as a Foreign Terrorist Organization ("FTO") continuously since 1997, and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

**Iran's Provision of Material Support and Resources to the Hamas**

40.     Since 1984 until the present time, defendant Iran has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

41.     During the period relevant hereto, including the several year period preceding the Terrorist Attack, defendants Iran, MOIS, and IRG provided Hamas with massive financial support with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. Such financial support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Iran, in order to assist Hamas achieve goals shared by Iran. These goals included terrorizing the Jewish civilian population in Israel, and weakening Israel's economy, social fabric, and military strength and preparedness.

42.     The Iranian defendants provided this financial support to Hamas pursuant to an agreement reached between Iran and Hamas in the 1980s which remains in force until today. Under that agreement, Hamas undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel, the West Bank and Gaza, and in return Iran undertook to provide Hamas with financial support to carry out such extrajudicial killings and terrorist attacks. The purpose of this agreement was to achieve the goals detailed in the preceding paragraph.

43.     The Iranian defendants gave substantial aid, assistance and encouragement to one another and to Hamas, and provided massive financial support to Hamas, and thereby aided and abetted Hamas, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. The Iranian defendants did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and provision of material support and resources to Hamas.

44.     The Iranian defendants knowingly and willingly conspired, agreed and acted in concert with one another and with Hamas, in pursuance of the common plan, design, agreement and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. The Iranian defendants did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with Hamas.

45.     At all times relevant hereto, defendants MOIS was an were agency, instrumentality and/or office of defendant Iran, and performed acts on behalf of defendant Iran, in furtherance of the interests and policy of defendant Iran and within the scope of its agency and office, within the meaning of 28 U.S.C. §§ 1605(a)(7), 1605 note, 1605A(a)(1), and 28 U.S.C. § 1605A(c), which caused the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack and harm to the plaintiffs herein, in that defendant MOIS implemented and acted as a conduit and instrumentality for Iran's provision of funds to Hamas for the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack and actually trained Hamas militants to execute the Terrorist Attack.

46.     Defendant Iran authorized, ratified and approved the acts of defendant MOIS Iranian governmental support for terrorism is an official state policy and the approval of high-ranking Iranian officials, was necessary for Iran and MOIS to support Hamas with training and economic assistance. Iran's support of Hamas could not have occurred without this senior leadership approval.

47.     Accordingly, defendant Iran is vicariously liable for the acts of defendants MOIS.

48.     This Court repeatedly has held Iran and MOIS liable to victims of state-sponsored terrorism, particularly for terrorist acts carried out by Hamas in Israel. *See*, *e.g.*, *Campuzano v. Islamic Rep. of Iran*, 281 F. Supp. 2d 258, 261 (D.D.C. 2003); *Bennett v. Islamic Rep. of Iran,* 507 F. Supp.2d 117 (D.D.C. 2007); *Bodoff v. Islamic Rep. of Iran*, 424 F. Supp.2d 74 (D.D.C. 2006); *Stern v. Islamic Rep. of Iran*, 271 F. Supp.2d 286 (D.D.C. 2003); *Weinstein v. Islamic Rep. of Iran*, 184 F. Supp. 2d 13 (D.D.C. 2002); *Higgins v. Islamic Rep. of Iran*, 2000 WL 33674311 (D.D.C. 2000); *Eisenfeld v. Islamic Rep. of Iran*, 172 F.Supp.2d 1 (D.D.C. 2000); *Elahi v. Islamic Rep. of Iran*, 124 F.Supp.2d 97 (D.D.C. 2000); *Flatow v. Islamic Rep. of Iran*, 999 F. Supp. 1 (D.D.C. 1998); *see also Leibovich v. Syrian Arab Rep.*, 25 F. Supp. 3d 1071 (N.D. Ill. 2014).

## Syria's Provision of Material Support and Resources to Hamas

49.     Since 1979 until the present time, defendant Syria has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

50.     During the period relevant hereto, including the several year periods preceding the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack, defendant Syria provided Hamas with material support and resources within the meaning of 28 U.S.C. § 1605A(a)(1), described in detail below, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack. Such support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Syria, in order to assist Hamas achieve goals shared by Syria. These goals included terrorizing the Jewish civilian population in Israel,

and weakening Israel's economy, social fabric, and military strength and preparedness through extremist violence targeting civilians.

51.     Defendant Syria provided the material support and resources detailed below to Hamas pursuant to an agreement reached between Syria and Hamas in the late 1980s. Under that agreement, Hamas undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel, the West Bank and Gaza, and in return Syria undertook to provide Hamas with material support and resources to carry out such extrajudicial killings and terrorist attacks. The purpose of this agreement was to achieve the goals detailed in the preceding paragraph.

52.     The material support and resources which were provided by Syria to Hamas in the years preceding the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack for the purpose of facilitating acts of extrajudicial killing and terrorism included *inter alia*: provision of financial support to Hamas for the purpose of carrying out terrorist attacks; provision of military-grade explosives, military firearms and other weapons and material to Hamas; provision of specialized and professional military training for the planning and execution of terrorist attacks (hereinafter: "terrorist training") to Hamas; providing use of Syria-owned and operated training bases and military facilities in which terrorist training was provided to Hamas and its terrorist operatives; providing Hamas and its terrorist operatives with safe haven and refuge from capture in Syria and in areas of Lebanon controlled by Syria; providing Hamas means of electronic communication and electronic communications equipment for carrying out terrorist attacks; financial services, including banking and wire transfer services, provided to Hamas by financial institutions owned and controlled by Syria at Syria's direction, which services were intended to and did enable Hamas to surreptitiously transfer funds used to finance terrorist attacks; and means of transportation, including allowing terrorist operatives of Hamas passage and

transportation on Syrian-owned aircraft to allow them to avoid detection and carry out further terrorist attacks.

53.     At all times relevant hereto, defendant Syria provided Hamas and its terrorist operatives with terrorist training at military training bases, camps and facilities operated and/or funded and/or controlled by Syria and located in Syria and in areas of Lebanon controlled by Syria, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack. This terrorist training, which was professional and extensive and included the use of explosives, firearms and other weapons, was provided by and through Syrian military and intelligence officials, and other agents, employees and officials of Syria acting within the scope of their agency and employment and under the express command and authorization of Syria.

54.     In addition, at all times relevant hereto, Syria provided terrorist training, weapons, and funds to be used to carry out terrorist attacks to Hamas and its terrorist operatives, by and through the agency of other terrorist organizations which received material support and resources from Syria, and which acted as instrumentalities, agents and proxies of Syria for the purpose of providing terrorist training and other material support and resources to Hamas.

55.     At all times relevant hereto, Syria provided Hamas and its terrorist operatives with lodging, safe haven and shelter in Syria and in areas of Lebanon controlled by Syria, with the specific intention of preventing their apprehension and permitting them to plan and carry out acts of extrajudicial killing and international terrorism freely and unhindered. This lodging, safe haven and shelter was provided on military bases and facilities, and in residences, owned and controlled by Syria.

56.     Syria gave substantial aid, assistance and encouragement to Hamas, and provided the massive material support and resources described above to Hamas, and thereby aided and abetted Hamas, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack. Defendants Syria did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and provision of material support and resources to the Hamas.

57.     Syria knowingly and willingly conspired, agreed and acted in concert with Hamas, in pursuance of the common plan, design, agreement and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing and international terrorism including the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack. Defendant Syria did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with Hamas.

58.     This Court has held Syria liable to victims of state-sponsored terrorism, particularly for terrorist acts carried out by Hamas in Israel. *See, e.g., Braun et al v. Islamic Republic of Iran et al*, 228 F.Supp.3d 64 (2017); *Leibovitch v. Syrian Arab Republic*, 25 F. Supp. 3d 1071 (N.D. Ill. 2014).

**The Route 60 Terrorist Attack**

59.     Several days prior to the Route 60 Terror Attack a terrorist cell of the Izz a-Din al-Qassam Brigades, the operational wing of the designated Hamas organization acquired weapons and a car and conspired to carry out a shooting attack. Their goal was to locate an appropriate

Israeli target and kill as many innocent victims as possible with their guns. Pursuant to the aforementioned plan, the cell spied out a stretch of highway whereby they could locate an Israeli vehicle and perpetrate a drive-by shooting.

60.     On July 1, 2016, the decedent Rabbi Michael Mark, his wife Chava Mark and children Padaya and TBM were traveling in the family's car on Route 60, near their home in the community of Otniel.

61.     Two Hamas terrorists, Muhammad al-Faqih, the cell commander and Muhammad al-Amairah, both from the village of Dura, undertook to carry out the Route 60 Terror Attack.

62.     Al-Faqih along with al-Amairah were veterans of Israeli prisons, having served years of jail time prior to the Route 60 Terror Attack for their involvement in other terrorist activities.

63.     Al-Faqif, more senior in the terrorist group, maintained the cell's relationship and communications with other Hamas leaders.

64.     The pair of gunmen spotted the Mark's car and began to follow it in their vehicle. After several minutes of trailing the car, the terrorists drove adjacent to the Mark family car and unleashed a close-range barrage of 25 bullets from their assault rifle at the Marks.

65.     As a result of the shooting Rabbi Mark lost control of the vehicle which crashed and flipped over.

66.     The terrorists then stopped their vehicle, exited and quickly approached the Marks' car with their weapons.

67.     Terrorist Muhammad al-Faqih circled the overturned vehicle intending to murder anyone left alive.

68.     He opened fired an additional time in the direction of the vehicle but stopped shooting because his associate, Al-Amairah, warned him of other vehicles approaching the site of the Route 60 Terror Attack.

69.     Israeli investigators later discovered 27 bullet holes in the car.

70.     Fearful of being caught, the two terrorists entered their vehicle and fled to their hometown of Dura from where they had set out for the Route 60 Terrorist Attack earlier that day.

71.     As a result of the shooting, Rabbi Michael Mark was killed, his wife Chava Mark, was critically injured from multiple gunshot wounds, and two of their children Padaya and TBM were grievously wounded as well.

72.     Passing vehicles on Route 60 discovering the badly damaged car stopped and attempted to provide aid to the Mark family.

73.     The badly injured Chava Mark and her children were taken away to the hospital by ambulance for emergency treatment.

74.     Medical rescuers arriving on the scene attempted to resuscitate Rabbi Mark, who was still strapped into his car seat, but did not succeed in their efforts and he was declared dead at the scene.

75.     Chava Mark remained in a coma for several days after the attack, eventually regaining consciousness, but remains in poor health until today.

76.     The terrorist left their village of Dura later that day and went into hiding, becoming fugitives from the Israeli authorities.

77.     They were eventually caught by the Israeli security services and Israel Defense Forces (IDF).

78.     The cell commander Al-Faqih, was killed in an armed confrontation with the IDF during his attempted capture on July 26, 2016.

79.     Two weeks after the attack Al-Amairah was arrested.

80.     He was subsequently convicted by an Israeli court of premeditated murder and several counts of attempted murder both for the Route 60 Terrorist Attack on the Mark family and for three other attempted attacks he had engaged in.

81.     In his confession, he stated that the terrorists were aware that there were children still alive in the car after the initial shooting and they had regretted that they had driven off and had not been able to kill them as well.

82.     Several of Al-Fakih's relatives were also arrested, including his brother, Sahib, who confessed in his interrogation to aiding his brother, as well as helping him hide weapons.

83.     His cousin, Muaz Al-Fakih, also confessed to helping find a place for him to hide in the days that followed the Route 60 Terrorist Attack. After the Route 60 Terrorist Attack, publications and posters pointing out Muhammad al-Faqih's affiliation with the Hamas organization and the Izz a-Din al-Qassam Brigades appeared on websites identified with Hamas and its operational terrorist wing.

84.     The Hamas terrorist organization proudly identified the murderous shooting of the Mark Family car as one of their "successful" armed operations.

85.     It publicly praised the Route 60 Terror Attack and referred to the attackers as a "martyr" and "heroes."

86.     The decedent Rabbi Michael Mark was killed in the Route 60 Terrorist Attack.

87.     Chava Mark, Padaya Mark and TBM all suffered severe physical, psychological and emotional harm as a result of Route 60 Terrorist Attack.

88.     The family of Rabbi Michael Mark and Chava Mark, including their other children, all suffered severe psychological and emotional harm as a result of the Route 60 Terrorist Attack.

89.     The sudden, brutal terrorist murder of the beloved Rabbi Michael Mark and the injuries inflicted on Chava, Padaya and TBM grievously impacted on all their lives until today.

90.     The Iranian and Syrian defendants conspired and acted in concert with the Hamas terrorist organization, in pursuit of their common goals, design and agreements with Hamas, discussed above, to carry out the Route 60 Terrorist Attack, and other such acts of extrajudicial killing and international terrorism, and the Route 60 Terrorist Attack was carried out by Hamas further to and as implementation of its aforementioned agreement and conspiracy with the defendants.

91.     Hamas carried out the Route 60 Terrorist Attack utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the defendants for the specific purpose of carrying out the Route 60 Terrorist Attack and other such acts of extrajudicial killing and international terrorism.

**The Hebron Terrorist Attack**

92.     On November 6, 2015, Eli Borochov, Eli's father, Ronen, and Eli's brother, Joseph, were walking up the steps to the Cave of the Patriarchs, also known as Maharat Hamachpela, in Hebron, Israel when Eli was shot in the thigh and testicles causing him to fall to the floor.

93.     Eli felt immense pain immediately.

94.     An ambulance arrived at the scene and rushed Eli to the hospital.

95.     While in the ambulance, an EMT punctured Eli's artery while trying to insert an IV.

96.     A doctor at the hospital indicated that if the bullet had just been a hairline from Eli's femoral artery, he would have died. Eli had emergency surgery that Friday night and was confined to the hospital for three days.

97.     Thereafter, Israel flew Eli back home to the U.S. Eli was forced to remain home for two months and missed a semester of college.

98.     Nasser Badawi ("Badawi") was indicted for the Hebron Terrorist Attack against Eli.

99.     A criminal trial took place against the shooter, Nasser Badawi, and he was found guilty.

100.    Badawi took part in the activities of the Hamas. For example, Badawi participated in the Hamas parade in Hebron, helped organize a parade and raised flags of Hamas.

101.    Badawi was an official member of Hamas and took part in the establishment of an official military unit of Hamas.

102.    Eli sustained severe physical, psychological and emotional harm as a result of the Hebron Terrorist Attack.

103.    The family of Eli, including Ronen, Devora, Shari, Josef, Shira and Avraham, have suffered psychological and emotional harm as a result of the Hebron Terrorist Attack on Eli and all their lives are still impacted negatively.

104.    The Iranian and Syrian defendants conspired and acted in concert with the Hamas terrorist organization, in pursuit of their common goals, design and agreements with Hamas, discussed above, to carry out the Hebron Terrorist Attack, and other such acts of extrajudicial killing and international terrorism, and the Hebron Terrorist Attack was carried out by Hamas

further to and as implementation of its aforementioned agreement and conspiracy with the defendants.

105.     Hamas carried out the Hebron Terrorist Attack utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the defendants for the specific purpose of carrying out the Hebron Terrorist Attack and other such acts of extrajudicial killing and international terrorism.

**The Bus Stop Terrorist Attack**

106.     On December 14, 2016, the 28th year anniversary of Hamas' founding, Abdal-Muhsin Shaher Hasouna ("Hasouna") rammed into fourteen people, including Yoav and Rotem Golan, who were waiting at a bus station near the main western entrance to the city of Jerusalem, near the Bridge of Strings.

107.     After getting up, Yoav and Rotem managed to run away and saw someone shoot Yoav.

108.     Yoav sustained serious physical injuries, including to his leg and shoulder. Due to his injuries from the Bus Stop Terrorist Attack, Yoav was wheelchair bound for a period of time. Rotem also sustained physical injuries due to the Bus Stop Terrorist Attack, including lacerations to her knees and a hamstring injury.

109.     Hasouna selected a central Jerusalem spot crowded with people. He found a bus stop where many people were waiting, then accelerated, and sped with force onto the waiting area, injuring the passengers who were waiting for public transportation.

110.     Hasouna was killed by a passerby who noticed the attack and who, with his personal weapon managed to shoot the terrorist.

111.    The investigation into the attack found no skid marks on the ground. Therefore, Hasouna intentionally rammed into a bus stop crowded with people with the intent of killing or causing serious bodily injury to them.

112.    After the attack, investigators found Hasouna's lifeless body in the motor vehicle with an Israeli license plate with his hand reaching for an axe that had been painted green (a color associated with Hamas).

113.    If Hasouna had not been killed by a passerby, he clearly planned to use the axe to continue terrorizing innocent people waiting for the bus.

114.    The night before the attack, Hasouna told his mother that he intended to intercede for her into Paradise.

115.    On December 15, 2015, a Hamas online forum (PALDF) published a poster declaring Hasouna, the terrorist who committed the attack: a son of the Hamas movement, which is to say a Hamas operative.

116.    A day earlier, the same forum reported on the terror attack, with details about the terrorist but without claiming responsibility.

117.    This behavior—postponing the claim of responsibility until details relating to the terror attack became clear, while taking time to examine whether a claim of responsibility might not harm the interests of the organization, the terrorist, or his relatives— typifies the organizational behavior of Hamas with respect to claiming responsibility for terror attacks, especially during the waves of terror attacks that have beset Israel.

118.    Hamas in the Hebron area also called the terrorist, in a poster displayed publicly, a "*shahid* of the Hamas movement," which is to say he was an operative of Hamas who was carrying out an operation on the organization's behalf when killed.

119.    The Hamas radio station Al-Aqsa Voice noted in a poster published on its website on December 16, 2015, the link between the terrorist's Hamas affiliation and the December 14 date of the terror attack. In this poster, the terrorist Abd al-Muhsin Hasouna is termed *shahid al-Intilaqa,* Arabic for "*Shahid* of the day of founding" or "*Shahid* of the bursting (of Hamas) into the air of the world."

120.    The poster thus indicates the symbolism in selecting the founding date of Hamas as the date for the terror attack.

121.    This poster shows a picture of the terrorist with a Palestinian flag and a green Hamas flag above him.

122.    The same site also refers to Hasouna as "one of the sons of the Islamic resistance movement Hamas, whose heroic operation, carried out on the 28th anniversary of the founding of the resistance movement, has ensured the continuation of the tradition of resistance, and of actions that the movement has adopted since its founding."

123.    The organization to which the *shahid* belongs "conveyed the message of the resistance and of the Hamas movement on the anniversary of its founding, according to which the response in the face of the occupation's crimes will continue as long as Palestinian land is occupied."

124.    As a result of the Bus Stop Terrorist Attack, Yoav and Rotem received psychological treatment because of the physical, emotional and psychological harm.

125.    The family of Yoav and Rotem, including Yehudit, Matan, Yael, Nadav, Shai, Efrat, Ohan, Omer, Shiri, Cici, Eddy, Chaim, Esther, Shmuel, Sara, Esther and David, have suffered psychological and emotional harm as a result of the Bus Stop Terrorist Attack on Yoav and Rotem and their lives are still impacted adversely.

126.    The Iranian and Syrian defendants conspired and acted in concert with the Hamas terrorist organization, in pursuit of their common goals, design and agreements with Hamas, discussed above, to carry out the Bus Stop Terrorist Attack, and other such acts of extrajudicial killing and international terrorism, and the Bus Stop Terrorist Attack was carried out by Hamas further to and as implementation of its aforementioned agreement and conspiracy with the defendants.

127.    Hamas carried out the Bus Stop Terrorist Attack utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the defendants for the specific purpose of carrying out the Bus Stop Terrorist Attack and other such acts of extrajudicial killing and international terrorism.

## FIRST CLAIM FOR RELIEF
## FOR DAMAGES UNDER 28 U.S.C. §1605A(c)

128.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

129.    Iran is a foreign state that since 1984 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

130.    Syria is a foreign state that since 1979 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

131.    The defendants provided material support and resources to Hamas, within the meaning of 28 U.S.C. § 1605A, which caused and facilitated the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack.

132.    The Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack were acts of extrajudicial killing within the meaning of 28 USC § 1605A.

Decedent Rabbi Michael Mark was severely injured by the Route 60 Terrorist Attack and died as a result of those injuries. The maiming and murder of Rabbi Michael Mark caused, his estate and Plaintiffs Chava Mark, Padaya Mark, TBM, RLM, EBM, Netanel Chaim Mark, Yehoshua Mordechai Mark, Mirya Mark, Orit Mark and Pdaya Menachem Mark severe injury, including: conscious pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

133.   Plaintiffs Chava Mark, Padaya Mark and TBM suffered severe physical, psychological, emotional and other injuries as a result of the Route 60 Terrorist Attack, including: extreme pain and suffering, loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; loss of solatium and pecuniary loss and loss of income.

134.   The injuries suffered by Plaintiffs Chava Mark, Padaya Mark and TBM in the Route 60 Terrorist Attack caused other Plaintiffs, including Shira Hodaia Mark Charif, Netanel Chaim Mark, Yehoshua Mordechai Mark, Miryam Mark, Orit Mark, Pdaya Menachem Mark, Ayelet Hashachar Batt, Aryeh Batt, Avi Batt and Elisheva Hirschfeld severe harm, including: loss of guidance, companionship and society, loss of consortium, severe emotional distress and mental anguish, loss of solatium; and pecuniary loss and loss of income.

135.   Plaintiff Eli suffered severe physical, psychological, emotional and other injuries as a result of the Hebron Terrorist Attack, including: extreme pain and suffering, severe emotional distress and mental anguish; pecuniary loss and loss of income.

136.   The injuries suffered by Plaintiff Eli in the Hebron Terrorist Attack caused Plaintiffs Ronen, Devora, Shari, Josef, Shira and Avraham severe injury, including: psychological

injury, loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; loss of solatium and pecuniary loss and loss of income.

137.    Plaintiffs Yoav and Golan suffered severe physical, psychological, emotional and other injuries as a result of the Bus Stop Attack, including: extreme pain and suffering, severe emotional distress and mental anguish; loss of consortium; loss of guidance, companionship and society; pecuniary loss and loss of income.

138.    The injuries suffered by Plaintiffs Yoav and Golan in the Bus Stop Terrorist Attack caused Plaintiffs Raphael, Yehudit, Matan, Yael, Nadav, Shai, Efrat, Ohad, Omer, Shiri, Cici, Eddy, Chaim, Esther, Shmuel, Sara, Esther and David severe injury, including: psychological injury, loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; loss of solatium and pecuniary loss and loss of income.

139.    As a direct and proximate result of the conduct of the defendants, Plaintiffs suffered the injuries and harm described herein.

140.    The defendants are therefore jointly and severally liable under 28 USC 1605A(c) for the full amount of Plaintiffs' damages. The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

141.    The plaintiffs are all U.S. citizens or U.S. nationals.

142.    As a direct and proximate result of the conduct of the defendants, plaintiffs suffered the injuries and harm described herein.

143.    The defendants are therefore jointly and severally liable under 28 USC 1605A(c) for the full amount of plaintiffs' damages. The conduct of the defendants was criminal, outrageous,

extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

## SECOND CLAIM FOR RELIEF
## WRONGFUL DEATH

144.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

145.    Defendants, personally and/or through their agents and/or employees and/or co-conspirators, willfully and deliberately authorized, organized, planned, aided, abetted, induced, conspired to commit, provided material support for and executed the Route 60 Terrorist Attack.

146.    Defendants' behavior constituted a breach of legal duties to desist from committing, or aiding, abetting, authorizing, encouraging or conspiring to commit acts of extrajudicial killing, and to refrain from intentionally, wantonly, and/or negligently authorizing or causing the infliction of death, physical injuries and harm to persons such as the Plaintiffs herein and the decedent.

147.    Defendants' actions were willful, malicious, intentional, wrongful, unlawful, negligent and/or reckless and were the proximate cause of the Route 60 Terrorist Attack.

148.    At the time of his death, decedent Rabbi Michael Mark was a much beloved husband and father of ten children, enjoying good health, gainfully employed as the head of a religious seminary, industrious and in possession of all his faculties.

149.    The Route 60 Terrorist Attack caused decedent, his estate and Plaintiffs Chava Mark, Padaya Mark, TBM, RLM, EBM, Netanel Chaim Mark, Yehoshua Mordechai Mark, Mirya Mark, Orit Mark, Pdaya Menachem Mark, Ayelet Hashachar Batt, Aryeh Batt, Avraham Batt and Elisheva Hirschfeld severe injury, including: pain and suffering; pecuniary loss and loss of income;

loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

150.     Defendants are therefore jointly and severally liable for the full amount of Plaintiffs' damages. The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

## THIRD CLAIM FOR RELIEF ON BEHALF OF
## THE ESTATE OF RABBI MICHAEL MARK
## SURVIVAL DAMAGES

151.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

152.     The Route 60 Terrorist Attack caused by defendants' actions herein caused decedent Michael Mark and his estate severe injury, including pain and suffering, pecuniary loss and loss of income. From the time of the Route 60 Terrorist Attack until the time of his death, decedent Michael Mark suffered great conscious pain, shock and physical and mental anguish.

153.     Defendants are therefore jointly and severally liable to the Estate of Michael Mark for the full amount of decedent's damages, in such sums as may hereinafter be determined. The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

## FOURTH CLAIM FOR RELIEF ON BEHALF OF PLAINTIFFS
## CHAVA MARK, PADAYA MARK, TBM, ELI M. BOROCHOV,
## YOAV GOLAN AND ROTEM SHOHANA GOLAN
## BATTERY

154.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

155.    The Route 60 Terrorist Attack caused Plaintiffs Chava Mark, Padaya Mark and TBM severe physical injuries.

156.    The Route 60 Terrorist Attack caused Plaintiffs Chava Mark, Padaya Mark and TBM severe psychological injuries, extreme pain and suffering, and severe financial loss, including deprivation of future income.

157.    The Route 60 Terrorist Attack constituted a battery on the persons of Plaintiffs Chava Mark, Padaya Mark and TBM. The Hebron Terrorist Attack caused Plaintiff Eli severe physical injuries.

158.    The Hebron Terrorist Attack caused Plaintiff Eli severe psychological injuries, extreme pain and suffering, and severe financial loss, including deprivation of future income.

159.    The Hebron Terrorist Attack constituted a battery on the person of Plaintiff Eli. The Bus Route Attack caused Plaintiffs Yoav and Rotem severe physical injuries.

160.    The Bus Route Attack caused Plaintiffs Yoav and Rotem severe psychological injuries, extreme pain and suffering, and severe financial loss, including deprivation of future income.

161.    The Bus Route Attack constituted a battery on the persons of Plaintiffs Yoav and Rotem. Defendants' actions were willful, malicious, intentional, reckless, unlawful and were the proximate cause of the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack and the battery on the persons of Plaintiffs Chava Mark, Padaya Mark, TBM, Eli, Yoav and Rotem and the injuries Plaintiffs suffered thereby.

162.    Defendants are therefore jointly and severally liable for the full amount of Plaintiffs' Chava Mark, Padaya Mark, TBM, Eli, Yoav and Rotem's injuries.

163.    The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

## FIFTH CLAIM FOR RELIEF ON BEHALF OF PLAINTIFFS CHAVA MARK, PADAYA MARK, TBM, ELI M. BOROCHOV, RONEN STEVEN BOROCHOV, JOSEF S. BOROCHOV, YOAV GOLAN AND ROTEM SHOSHANA GOLAN ASSAULT

164.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

165.    The Terrorist Attack caused Plaintiffs Chava Mark, Padaya Mark and TBM fear and apprehension of harm and death, and actual physical harm, and constituted an assault on the persons of Plaintiffs Chava Mark, Padaya Mark and TBM.

166.    The Hebron Terrorist Attack caused Plaintiff Eli fear and apprehension of harm and death, and actual physical harm, and constituted an assault on the person of Plaintiff Eli.

167.    The Hebron Terrorist Attack caused Plaintiffs Ronen and Josef, who were with Eli at the time of the terrorist attack, fear and apprehension of harm and death, and constituted an assault on the person of Plaintiffs Ronen and Josef.

168.    The Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack and assault on their persons, which were direct and proximate results of defendants' actions, caused Plaintiffs mental anguish and caused Plaintiffs Chava Mark, Padaya Mark, TBM, Eli, Yoav and Rotem actual physical injury and pain and suffering.

169.    Defendants are therefore jointly and severally liable for the full amount of Plaintiffs' Chava Mark, Padaya Mark, TBM, Eli, Yoav and Rotem's damages.

170.     The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

## SIXTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

171.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

172.     Defendants' conduct was willful, outrageous and dangerous to human life, and violates applicable criminal law, all international standards of civilized human conduct and common decency.

173.     Defendants intended to, and did in fact, terrorize the Plaintiffs, and cause them egregious emotional distress.

174.     As a result, and by reason of the three terrorist attacks, which were caused by the actions of defendants described herein, Plaintiffs have suffered and will continue to suffer terror, severe mental anguish, bereavement and grief, and injury to their feelings.

175.     Defendants are therefore jointly and severally liable for the full amount of Plaintiffs' damages. The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

## SEVENTH CLAIM FOR RELIEF
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

176.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

177.     Defendants' conduct was willful, outrageous and/or grossly negligent, and was dangerous to human life and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

178.     Defendants' conduct terrorized the Plaintiffs and caused them egregious emotional distress.

179.     Defendants are therefore jointly and severally liable for the full amount of Plaintiffs' damages. The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

## EIGHTH CLAIM FOR RELIEF
## CIVIL CONSPIRACY

180.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

181.     The defendants knowingly and willingly conspired, agreed and acted in concert with each other and with Hamas in a common plan and design to facilitate and cause acts of international terrorism, extrajudicial killing and personal injury including the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack, which harmed Plaintiffs. As a result of the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack caused, resulting from and facilitated by the conspiracy between the defendants and Hamas, Plaintiffs suffered the damages enumerated herein.

182.     Defendants are therefore jointly and severally liable for the full amount of Plaintiffs' damages.

## NINTH CLAIM FOR RELIEF
## AIDING AND ABETTING

183.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

184.     The defendants provided Hamas with material support and resources within the meaning of 28 U.S.C. §1605A, and other substantial aid and assistance, in order to aid, abet, facilitate and cause the commission of acts of international terrorism, extrajudicial killing and personal injury including the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack which harmed the Plaintiffs.

185.     As a result of the Route 60 Terrorist Attack, the Hebron Terrorist Attack and the Bus Stop Terrorist Attack caused, resulting from and facilitated by the defendants' provision of material support and resources and other acts of aiding and abetting, Plaintiffs suffered the damages enumerated herein. Defendants are therefore jointly and severally liable for the full amount of Plaintiffs' damages.

## TENTH CLAIM FOR RELIEF
## AGAINST THE IRANIAN DEFENDANTS
## VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

186.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

187.     At all relevant times, defendant MOIS was an agent and/or office of defendant Iran, acting within the scope of its agency and/or office. Defendant MOIS engaged in the acts described herein within the scope of its agency and/or office and to further the interests of defendant Iran.

188.     Defendant Iran authorized, ratified and/or condoned the conduct of defendant MOIS.

189.    Therefore, defendant Iran is vicariously liable for the acts of defendant MOIS.

190.    The Iranian defendants are therefore jointly and severally liable for the full amount of Plaintiffs' damages, in such sums as may be hereinafter determined.


## JURY DEMAND

191.    Plaintiffs demand trial by jury of all issues legally triable to a jury.


## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs demand judgment as follows: Judgment against all defendants, jointly and severally, for compensatory damages in an amount to be determined at trial;

(a)     Judgment against all defendants, jointly and severally, for punitive damages in an amount to be determined at trial; Plaintiffs' costs and expenses; Plaintiffs' attorneys fees; and

(b)     Such other and further relief as the Court finds just and equitable.

Dated: Brooklyn, New York
September 24, 2019

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for Plaintiffs*

By:_____
Robert J. Tolchin
(D.C. Bar #NY0088)

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627

NITSANA DARSHAN-LEITNER & CO.
Nitsana Darshan-Leitner
*Israeli counsel for the Plaintiffs*
10 Hata'as Street
Ramat Gan, 52512 Israel
Israeli #: 011-972-3-7514175
U.S. #: 212-591-0073