UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
-------------------------------------------------------------------X

ELI M. BOROCHOV
433 Arbuckle Avenue, Cedarhurst, NY 11518

RONEN STEVEN BOROCHOV
433 Arbuckle Avenue, Cedarhurst, NY 11518

DEVORA SUE BOROCHOV
433 Arbuckle Avenue, Cedarhurst, NY 11518

SHARI MAYER BOROCHOV
433 Arbuckle Avenue, Cedarhurst, NY 11518

JOSEF S. BOROCHOV
433 Arbuckle Avenue, Cedarhurst, NY 11518

SHIRA NECHAMA BOROCHOV
433 Arbuckle Avenue, Cedarhurst, NY 11518

AVRAHAM M. BOROCHOV
433 Arbuckle Avenue, Cedarhurst, NY 11518

YOAV GOLAN
Tel Hai 22, Kefar Saba, Israel

ROTEM SHOSHANA GOLAN
Tel Hai 22, Kefar Saba, Israel

RAPHAEL GOLAN
Zarhi 56/11, Jerusalem, Israel

YEHUDIT GOLAN
Zarhi 56/11, Jerusalem, Israel

MATAN G GOLAN
Zarhi 56/11, Jerusalem, Israel

YAEL GOLAN INBAR
Zarhi 56/11, Jerusalem, Israel

NADAV GOLAN
Zarhi 56/11, Jerusalem, Israel

SHAI FISHFEDER
Elkalai 2, Kefar Saba, Israel

Case no. 19-cv-2855 (TNM)

~~FIRST~~ SECOND **AMENDED COMPLAINT**

EFRAT FISHFEDER
Elkalai 2, Kefar Saba, Israel

OHAD FISHFEDER
Elkalai 2, Kefar Saba, Israel

OMER FISHFEDER
Elkalai 2, Kefar Saba, Israel

SHIRI FISHFEDER
Elkalai 2, Kefar Saba, Israel

CICI JACOBSON
Shimoni 8, Rehovot, Israel

EDDY JACOBSON
Shimoni 8, Rehovot, Israel

CHAIM GOLDWATER
Hayahalom 27, Nof Ayalon, Israel

ESTHER GOLDWATER
Hayahalom 27, Nof Ayalon, Israel

SHMUEL GORFINKLE
Aharon Maskin 44, Petah Tikva, Israel

SARA GORFINKLE
Aharon Maskin 44, Petah Tikva, Israel

ESTHER FISHFEDER
Reines 9, Givataim, Israel

-and-

DAVID FISHFEDER
Reines 9, Givataim, Israel

Plaintiffs,

-against-

THE ISLAMIC REPUBLIC OF IRAN
Ministry of Foreign Affairs, Khomeini Ave. United
Nations St., Teheran, Iran;

-and-

THE SYRIAN ARAB REPUBLIC
c/o Foreign Minister Walid al-Mualem Ministry of
Foreign Affairs. Shora, Muajireen, Damascus, Syria,

                                   Defendants.

-------------------------------------------------------------------X


        Plaintiffs, by their counsel, complain of the Defendants, and hereby allege for their First

Amended Complaint as follows:


                                  **INTRODUCTION**

        1.      This is a civil action for wrongful death, personal injury and related torts pursuant

to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, et seq., arising from a

brutal shooting attack carried out by Hamas on November 6, 2015 in Hebron, Israel when U.S.

citizen Eli M. Borochov ("Eli") was shot in his thigh and testicles on his way up the steps to

Maharat Hamachpela (the cave of Patriarchs) ("Hebron Terrorist Attack").

        2.      This is also a civil action for personal injury and related torts pursuant to the

FSIA, 28 U.S.C. § 1602, et seq., arising from a cowardly terrorist attack carried out by Hamas on

U.S. citizen Yoav Golan ("Yoav") and his wife, Israeli citizen, Rotem Shoshana Golan

("Rotem"), on December 15, 2016 while there were waiting at a bus stop when a motor vehicle

ran into them. While Yoav and Rotem were able to stand up after being intentionally plowed

down by a motor vehicle, Yoav was shot at by the Hamas terrorists ("Bus Stop Terrorist

Attack"). The Hebron Terrorist Attack and the Bus Stop Terrorist Attack were carried out by

Hamas using material support and resources provided by defendants the Islamic Republic of Iran

and the Syrian Arab Republic.

-3-

## JURISDICTION AND VENUE

3.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330-1332, 1367, 1605 note, and 1605A(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4) and the rules of pendent venue.

## THE PARTIES

4.      Plaintiff Eli M. Borochov at all times relevant hereto is and was a United States citizen domiciled in the U.S. and was injured in the Hebron Terrorist Attack.

5.      Plaintiff Shari Mayer Borochov at all times relevant hereto is and was a United States citizen domiciled in the U.S., and married Eli on August 20, 2019.

6.      Plaintiff Ronen Steven Borochov at all times relevant hereto is a U.S. and Israeli citizen domiciled in the U.S., and the father of Eli. Plaintiff Devora Sue Borochov at all times relevant hereto is a U.S. citizen domiciled in the U.S., and the mother of Eli.

7.      Josef S. Borochov at all times relevant hereto is a U.S. citizen domiciled in the U.S., and the brother of Eli. Shira Nechama Borochov at all times relevant hereto is a U.S. citizen domiciled in the U.S., and the sister of Eli.

8.      Avraham M. Borochov at all times relevant hereto is a U.S. citizen domiciled in the U.S., and the brother of Eli.

9.      Yoav Golan at all times relevant hereto is a U.S. citizen domiciled in Israel, and was injured in the Bus Stop Terrorist Attack.

10.     Rotem Shoshana Golan at all times relevant hereto is an Israeli citizen domiciled in Israel, the wife of Yoav and was injured in the Bus Stop Terrorist Attack.

11.     Raphael Golan at all times relevant hereto is a British and Israeli citizen domiciled in Israel and is the father of Yoav.

12.     Yehudit Golan at all times relevant hereto is a U.S. citizen domiciled in Israel, and is the mother of Yoav.

13.     Matan Golan at all times relevant hereto is a U.S. citizen domiciled in Israel, and is the brother of Yoav. Yael Golan Inbar at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the sister of Yoav.

14.     Nadav Golan at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the brother of Yoav.

15.     Shai Fishfeder at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the father of Rotem.

16.     Efrat Fishfeder at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the mother of Rotem.

17.     Ohad Fishfeder at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the brother of Rotem.

18.     Omer Fishfeder at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the brother of Rotem.

19.     Shiri Fishfeder at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the sister of Rotem.

20.     Cici Jacobson at all times relevant hereto is a U.S. citizen domiciled in Israel and is the grandmother of Yoav.

21.     Eddy Jacobson at all times relevant hereto is a U.S. citizen domiciled in Israel, and is the grandfather of Yoav.

22.     Chaim Goldwater at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the grandfather of Yoav.

23.     Esther Goldwater at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the grandmother of Yoav.

24.     Shmuel Gorfinkle at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the grandfather of Rotem.

25.     Sara Gorfinkle at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the grandmother of Rotem.

26.     Esther Fishfeder at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the grandmother of Rotem.

27.     David Fishfeder at all times relevant hereto is an Israeli citizen domiciled in Israel, and is the grandfather of Rotem.

28.     Defendant The Islamic Republic of Iran ("Iran") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. § 1603, designated since 1984 as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)). Iran, through its political subdivisions, agencies, instrumentalities, officials, employees and agents, including the Iranian Ministry of Information and Security, provided Hamas with material support and resources, for acts of extrajudicial killing within the meaning of 28 U.S.C. § 1605A(a)(1), including the Hebron Terrorist Attack and the Bus Stop Terrorist Attack, and performed other actions that enabled, facilitated and caused the Hebron Terrorist Attack and the Bus Stop Terrorist Attack and harm to the Plaintiffs herein.

29.     Defendant The Syrian Arab Republic (hereinafter "Syria") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. § 1603, designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)). Syria provided Hamas with material support and resources for the commission

of acts of extrajudicial killing within the meaning of 28 U.S.C. § 1605A(a)(1), including the Hebron Terrorist Attack and the Bus Stop Terrorist Attack and performed other actions that enabled, facilitated and caused the Hebron Terrorist Attack and the Bus Stop Terrorist Attack and harm to the Plaintiffs herein.

## UNDERLYING FACTS

### Hamas

30.   Hamas is a radical terrorist organization that was established by Islamic militants in 1987. It is the Palestinian branch of the extremist Muslim Brotherhood organization. Hamas views Israel and the United States as the greatest enemies of Islam. Hamas opposes a peaceful resolution of the Middle East conflict. The Hamas charter, first published in 1988, states that "There is no solution to the Palestinian problem except by Jihad," or violent struggle against Israel and the West. Hamas's openly-declared goal is the creation of an Islamic state in the territory of Israel, the West Bank and the Gaza Strip, and the destruction of the State of Israel and the murder or expulsion of its Jewish residents. Hamas seeks to achieve this goal by carrying out terrorist attacks against Jewish civilians in Israel, the West Bank and the Gaza Strip. Hamas proudly and openly acknowledges that it uses terrorism to achieve its political goals. Hamas employs extremist violence against civilian targets in an effort to coerce, intimidate and influence government decision-makers and the public in Israel to accept Hamas's demands.

31.   Between the time of its founding and September 4, 1997 (and until the present day), Hamas has carried out thousands of terrorist attacks in Israel, the West Bank and the Gaza Strip, in which scores of Israeli and U.S. citizens, as well as the nationals of many other countries were murdered and thousands more wounded.

32.    Between the time of its founding and September 4, 1997, Hamas's policy and practice of carrying out terrorist attacks was and is notorious and well known to the public at large, including the defendants.

33.    Between 1999 and September 4, 1997, the courts of the United States, including this Court, published a number of decisions finding that Hamas was responsible for terrorist attacks in which American and Israeli citizens were killed or injured. Hamas has been designated by the United States Government as a Specially Designated Terrorist ("SDT") continuously since 1995, as a Foreign Terrorist Organization ("FTO") continuously since 1997, and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

**Iran's Provision of Material Support and Resources to the Hamas**

34.    Since 1984 until the present time, defendant Iran has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

35.    During the period relevant hereto, including the several year period preceding the Terrorist Attack, defendants Iran, MOIS, and IRG provided Hamas with massive financial support with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. Such financial support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Iran, in order to assist Hamas achieve goals shared by Iran. These goals included terrorizing the Jewish civilian population in Israel, and weakening Israel's economy, social fabric, and military strength and preparedness.

36.    The Iranian defendants provided this financial support to Hamas pursuant to an agreement reached between Iran and Hamas in the 1980s which remains in force until today.

Under that agreement, Hamas undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel, the West Bank and Gaza, and in return Iran undertook to provide Hamas with financial support to carry out such extrajudicial killings and terrorist attacks. The purpose of this agreement was to achieve the goals detailed in the preceding paragraph.

37.     The Iranian defendants gave substantial aid, assistance and encouragement to one another and to Hamas, and provided massive financial support to Hamas, and thereby aided and abetted Hamas, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. The Iranian defendants did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and provision of material support and resources to Hamas.

38.     The Iranian defendants knowingly and willingly conspired, agreed and acted in concert with one another and with Hamas, in pursuance of the common plan, design, agreement and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. The Iranian defendants did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with Hamas.

39.     At all times relevant hereto, defendants MOIS was an were agency, instrumentality and/or office of defendant Iran, and performed acts on behalf of defendant Iran, in furtherance of the interests and policy of defendant Iran and within the scope of its agency and office, within the meaning of 28 U.S.C. §§ 1605(a)(7), 1605 note, 1605A(a)(1), and 28 U.S.C.

§ 1605A(c), which caused the Hebron Terrorist Attack and the Bus Stop Terrorist Attack and harm to the plaintiffs herein, in that defendant MOIS implemented and acted as a conduit and instrumentality for Iran's provision of funds to Hamas for the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack and actually trained Hamas militants to execute the Terrorist Attack.

40.     Defendant Iran authorized, ratified and approved the acts of defendant MOIS Iranian governmental support for terrorism is an official state policy and the approval of high-ranking Iranian officials, was necessary for Iran and MOIS to support Hamas with training and economic assistance. Iran's support of Hamas could not have occurred without this senior leadership approval.

41.     Accordingly, defendant Iran is vicariously liable for the acts of defendants MOIS.

42.     This Court repeatedly has held Iran and MOIS liable to victims of state-sponsored terrorism, particularly for terrorist acts carried out by Hamas in Israel. *See, e.g.*, *Campuzano v. Islamic Rep. of Iran*, 281 F. Supp. 2d 258, 261 (D.D.C. 2003); *Bennett v. Islamic Rep. of Iran,* 507 F. Supp.2d 117 (D.D.C. 2007); *Bodoff v. Islamic Rep. of Iran*, 424 F. Supp.2d 74 (D.D.C. 2006); *Stern v. Islamic Rep. of Iran*, 271 F. Supp.2d 286 (D.D.C. 2003); *Weinstein v. Islamic Rep. of Iran*, 184 F. Supp. 2d 13 (D.D.C. 2002); *Higgins v. Islamic Rep. of Iran*, 2000 WL 33674311 (D.D.C. 2000); *Eisenfeld v. Islamic Rep. of Iran*, 172 F.Supp.2d 1 (D.D.C. 2000); *Elahi v. Islamic Rep. of Iran*, 124 F.Supp.2d 97 (D.D.C. 2000); *Flatow v. Islamic Rep. of Iran*, 999 F. Supp. 1 (D.D.C. 1998); *see also Leibovich v. Syrian Arab Rep.*, 25 F. Supp. 3d 1071 (N.D. Ill. 2014).

**Syria's Provision of Material Support and Resources to Hamas**

43.     Since 1979 until the present time, defendant Syria has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

44.     During the period relevant hereto, including the several year periods preceding the Hebron Terrorist Attack and the Bus Stop Terrorist Attack, defendant Syria provided Hamas with material support and resources within the meaning of 28 U.S.C. § 1605A(a)(1), described in detail below, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Hebron Terrorist Attack and the Bus Stop Terrorist Attack. Such support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Syria, in order to assist Hamas achieve goals shared by Syria. These goals included terrorizing the Jewish civilian population in Israel, and weakening Israel's economy, social fabric, and military strength and preparedness through extremist violence targeting civilians.

45.     Defendant Syria provided the material support and resources detailed below to Hamas pursuant to an agreement reached between Syria and Hamas in the late 1980s. Under that agreement, Hamas undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel, the West Bank and Gaza, and in return Syria undertook to provide Hamas with material support and resources to carry out such extrajudicial killings and terrorist attacks. The purpose of this agreement was to achieve the goals detailed in the preceding paragraph.

46.     The material support and resources which were provided by Syria to Hamas in the years preceding the Hebron Terrorist Attack and the Bus Stop Terrorist Attack for the purpose of facilitating acts of extrajudicial killing and terrorism included *inter alia*: provision of financial

support to Hamas for the purpose of carrying out terrorist attacks; provision of military-grade explosives, military firearms and other weapons and material to Hamas; provision of specialized and professional military training for the planning and execution of terrorist attacks (hereinafter: "terrorist training") to Hamas; providing use of Syria-owned and operated training bases and military facilities in which terrorist training was provided to Hamas and its terrorist operatives; providing Hamas and its terrorist operatives with safe haven and refuge from capture in Syria and in areas of Lebanon controlled by Syria; providing Hamas means of electronic communication and electronic communications equipment for carrying out terrorist attacks; financial services, including banking and wire transfer services, provided to Hamas by financial institutions owned and controlled by Syria at Syria's direction, which services were intended to and did enable Hamas to surreptitiously transfer funds used to finance terrorist attacks; and means of transportation, including allowing terrorist operatives of Hamas passage and transportation on Syrian-owned aircraft to allow them to avoid detection and carry out further terrorist attacks.

47.    At all times relevant hereto, defendant Syria provided Hamas and its terrorist operatives with terrorist training at military training bases, camps and facilities operated and/or funded and/or controlled by Syria and located in Syria and in areas of Lebanon controlled by Syria, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Hebron Terrorist Attack and the Bus Stop Terrorist Attack. This terrorist training, which was professional and extensive and included the use of explosives, firearms and other weapons, was provided by and through Syrian military and intelligence officials, and other agents, employees and officials of Syria acting

within the scope of their agency and employment and under the express command and authorization of Syria.

48.     In addition, at all times relevant hereto, Syria provided terrorist training, weapons, and funds to be used to carry out terrorist attacks to Hamas and its terrorist operatives, by and through the agency of other terrorist organizations which received material support and resources from Syria, and which acted as instrumentalities, agents and proxies of Syria for the purpose of providing terrorist training and other material support and resources to Hamas.

49.     At all times relevant hereto, Syria provided Hamas and its terrorist operatives with lodging, safe haven and shelter in Syria and in areas of Lebanon controlled by Syria, with the specific intention of preventing their apprehension and permitting them to plan and carry out acts of extrajudicial killing and international terrorism freely and unhindered. This lodging, safe haven and shelter was provided on military bases and facilities, and in residences, owned and controlled by Syria.

50.     Syria gave substantial aid, assistance and encouragement to Hamas, and provided the massive material support and resources described above to Hamas, and thereby aided and abetted Hamas, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Hebron Terrorist Attack and the Bus Stop Terrorist Attack. Defendants Syria did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and provision of material support and resources to the Hamas.

51.     Syria knowingly and willingly conspired, agreed and acted in concert with Hamas, in pursuance of the common plan, design, agreement and goals discussed above, to cause

and facilitate the commission of acts of extrajudicial killing and international terrorism including the Hebron Terrorist Attack and the Bus Stop Terrorist Attack. Defendant Syria did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with Hamas.

52.     This Court has held Syria liable to victims of state-sponsored terrorism, particularly for terrorist acts carried out by Hamas in Israel. *See, e.g., Braun et al v. Islamic Republic of Iran et al*, 228 F.Supp.3d 64 (2017); *Leibovitch v. Syrian Arab Republic*, 25 F. Supp. 3d 1071 (N.D. Ill. 2014).

**The Hebron Terrorist Attack**

53.      On November 6, 2015, Eli Borochov, Eli's father, Ronen, and Eli's brother, Joseph, were walking up the steps to the Cave of the Patriarchs, also known as Maharat Hamachpela, in Hebron, Israel when Eli was shot in the thigh and testicles causing him to fall to the floor.

54.     Eli felt immense pain immediately.

55.     An ambulance arrived at the scene and rushed Eli to the hospital.

56.     While in the ambulance, an EMT punctured Eli's artery while trying to insert an IV.

57.     A doctor at the hospital indicated that if the bullet had just been a hairline from Eli's femoral artery, he would have died. Eli had emergency surgery that Friday night and was confined to the hospital for three days.

58.     Thereafter, Israel flew Eli back home to the U.S. Eli was forced to remain home for two months and missed a semester of college.

59.     Nasser Badawi ("Badawi") was indicted for the Hebron Terrorist Attack against Eli.

60.     A criminal trial took place against the shooter, Nasser Badawi, and he was found guilty.

61.     Badawi took part in the activities of the Hamas. For example, Badawi participated in the Hamas parade in Hebron, helped organize a parade and raised flags of Hamas.

62.     Badawi was an official member of Hamas and took part in the establishment of an official military unit of Hamas.

63.     Eli sustained severe physical, psychological and emotional harm as a result of the Hebron Terrorist Attack.

64.     The family of Eli, including Ronen, Devora, Shari, Josef, Shira and Avraham, have suffered psychological and emotional harm as a result of the Hebron Terrorist Attack on Eli and all their lives are still impacted negatively.

65.     The Iranian and Syrian defendants conspired and acted in concert with the Hamas terrorist organization, in pursuit of their common goals, design and agreements with Hamas, discussed above, to carry out the Hebron Terrorist Attack, and other such acts of extrajudicial killing and international terrorism, and the Hebron Terrorist Attack was carried out by Hamas further to and as implementation of its aforementioned agreement and conspiracy with the defendants.

66.      Hamas carried out the Hebron Terrorist Attack utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the defendants for the specific purpose of carrying out the Hebron Terrorist Attack and other such acts of extrajudicial killing and international terrorism.

**The Bus Stop Terrorist Attack**

67.     On December 14, 2016, the 28th year anniversary of Hamas' founding, Abdal-Muhsin Shaher Hasouna ("Hasouna") rammed into fourteen people, including Yoav and Rotem Golan, who were waiting at a bus station near the main western entrance to the city of Jerusalem, near the Bridge of Strings.

68.     After getting up, Yoav and Rotem managed to run away and saw someone shoot Yoav.

69.     Yoav sustained serious physical injuries, including to his leg and shoulder. Due to his injuries from the Bus Stop Terrorist Attack, Yoav was wheelchair bound for a period of time. Rotem also sustained physical injuries due to the Bus Stop Terrorist Attack, including lacerations to her knees and a hamstring injury.

70.     Hasouna selected a central Jerusalem spot crowded with people. He found a bus stop where many people were waiting, then accelerated, and sped with force onto the waiting area, injuring the passengers who were waiting for public transportation.

71.     Hasouna was killed by a passerby who noticed the attack and who, with his personal weapon managed to shoot the terrorist.

72.     The investigation into the attack found no skid marks on the ground. Therefore, Hasouna intentionally rammed into a bus stop crowded with people with the intent of killing or causing serious bodily injury to them.

73.     After the attack, investigators found Hasouna's lifeless body in the motor vehicle with an Israeli license plate with his hand reaching for an axe that had been painted green (a color associated with Hamas).

74.     If Hasouna had not been killed by a passerby, he clearly planned to use the axe to continue terrorizing innocent people waiting for the bus.

75.     The night before the attack, Hasouna told his mother that he intended to intercede for her into Paradise.

76.     On December 15, 2015, a Hamas online forum (PALDF) published a poster declaring Hasouna, the terrorist who committed the attack: a son of the Hamas movement, which is to say a Hamas operative.

77.     A day earlier, the same forum reported on the terror attack, with details about the terrorist but without claiming responsibility.

78.     This behavior—postponing the claim of responsibility until details relating to the terror attack became clear, while taking time to examine whether a claim of responsibility might not harm the interests of the organization, the terrorist, or his relatives— typifies the organizational behavior of Hamas with respect to claiming responsibility for terror attacks, especially during the waves of terror attacks that have beset Israel.

79.     Hamas in the Hebron area also called the terrorist, in a poster displayed publicly, a "*shahid* of the Hamas movement," which is to say he was an operative of Hamas who was carrying out an operation on the organization's behalf when killed.

80.     The Hamas radio station Al-Aqsa Voice noted in a poster published on its website on December 16, 2015, the link between the terrorist's Hamas affiliation and the December 14 date of the terror attack. In this poster, the terrorist Abd al-Muhsin Hasouna is termed *shahid al-Intilaqa,* Arabic for "*Shahid* of the day of founding" or "*Shahid* of the bursting (of Hamas) into the air of the world."

81.     The poster thus indicates the symbolism in selecting the founding date of Hamas as the date for the terror attack.

82.     This poster shows a picture of the terrorist with a Palestinian flag and a green Hamas flag above him.

83.     The same site also refers to Hasouna as "one of the sons of the Islamic resistance movement Hamas, whose heroic operation, carried out on the 28th anniversary of the founding of the resistance movement, has ensured the continuation of the tradition of resistance, and of actions that the movement has adopted since its founding."

84.     The organization to which the *shahid* belongs "conveyed the message of the resistance and of the Hamas movement on the anniversary of its founding, according to which the response in the face of the occupation's crimes will continue as long as Palestinian land is occupied."

85.     As a result of the Bus Stop Terrorist Attack, Yoav and Rotem received psychological treatment because of the physical, emotional and psychological harm.

86.     The family of Yoav and Rotem, including Yehudit, Matan, Yael, Nadav, Shai, Efrat, Ohan, Omer, Shiri, Cici, Eddy, Chaim, Esther, Shmuel, Sara, Esther and David, have suffered psychological and emotional harm as a result of the Bus Stop Terrorist Attack on Yoav and Rotem and their lives are still impacted adversely.

87.     The Iranian and Syrian defendants conspired and acted in concert with the Hamas terrorist organization, in pursuit of their common goals, design and agreements with Hamas, discussed above, to carry out the Bus Stop Terrorist Attack, and other such acts of extrajudicial killing and international terrorism, and the Bus Stop Terrorist Attack was carried out by Hamas

further to and as implementation of its aforementioned agreement and conspiracy with the defendants.

88.     Hamas carried out the Bus Stop Terrorist Attack utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the defendants for the specific purpose of carrying out the Bus Stop Terrorist Attack and other such acts of extrajudicial killing and international terrorism.

## FIRST CLAIM FOR RELIEF
## FOR DAMAGES UNDER 28 U.S.C. §1605A(c)

89.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

90.     Iran is a foreign state that since 1984 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

91.     Syria is a foreign state that since 1979 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

92.     The defendants provided material support and resources to Hamas, within the meaning of 28 U.S.C. § 1605A, which caused and facilitated the Hebron Terrorist Attack and the Bus Stop Terrorist Attack.

93.     The Hebron Terrorist Attack and the Bus Stop Terrorist Attack were acts of extrajudicial killing within the meaning of 28 USC § 1605A.

94.     Plaintiff Eli suffered severe physical, psychological, emotional and other injuries as a result of the Hebron Terrorist Attack, including: extreme pain and suffering, severe emotional distress and mental anguish; pecuniary loss and loss of income.

95.    The injuries suffered by Plaintiff Eli in the Hebron Terrorist Attack caused Plaintiffs Ronen, Devora, Shari, Josef, Shira and Avraham severe injury, including: psychological injury, loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; loss of solatium and pecuniary loss and loss of income.

96.    Plaintiffs Yoav and Golan suffered severe physical, psychological, emotional and other injuries as a result of the Bus Stop Attack, including: extreme pain and suffering, severe emotional distress and mental anguish; loss of consortium; loss of guidance, companionship and society; pecuniary loss and loss of income.

97.    The injuries suffered by Plaintiffs Yoav and Golan in the Bus Stop Terrorist Attack caused Plaintiffs Raphael, Yehudit, Matan, Yael, Nadav, Shai, Efrat, Ohad, Omer, Shiri, Cici, Eddy, Chaim, Esther, Shmuel, Sara, Esther and David severe injury, including: psychological injury, loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; loss of solatium and pecuniary loss and loss of income.

98.    As a direct and proximate result of the conduct of the defendants, Plaintiffs suffered the injuries and harm described herein.

99.    The defendants are therefore jointly and severally liable under 28 USC 1605A(c) for the full amount of Plaintiffs' damages. The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

100.    The plaintiffs are all U.S. citizens or U.S. nationals.

101.    As a direct and proximate result of the conduct of the defendants, plaintiffs suffered the injuries and harm described herein.

102.    The defendants are therefore jointly and severally liable under 28 USC 1605A(c) for the full amount of plaintiffs' damages. The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

## SECOND CLAIM FOR RELIEF ON BEHALF OF PLAINTIFFS ELI M. BOROCHOV, YOAV GOLAN AND ROTEM SHOHANA GOLAN
## BATTERY

103.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

104.    The Hebron Terrorist Attack caused Plaintiff Eli severe psychological injuries, extreme pain and suffering, and severe financial loss, including deprivation of future income.

105.    The Hebron Terrorist Attack constituted a battery on the person of Plaintiff Eli. The Bus Route Attack caused Plaintiffs Yoav and Rotem severe physical injuries.

106.    The Bus Route Attack caused Plaintiffs Yoav and Rotem severe psychological injuries, extreme pain and suffering, and severe financial loss, including deprivation of future income.

107.    The Bus Route Attack constituted a battery on the persons of Plaintiffs Yoav and Rotem. Defendants' actions were willful, malicious, intentional, reckless, unlawful and were the proximate cause of the Hebron Terrorist Attack and the Bus Stop Terrorist Attack and the battery on the persons of Plaintiffs Eli, Yoav and Rotem and the injuries Plaintiffs suffered thereby.

108.    Defendants are therefore jointly and severally liable for the full amount of Plaintiffs' Eli, Yoav and Rotem's injuries.

109.    The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

## THIRD CLAIM FOR RELIEF ON BEHALF OF PLAINTIFFS ELI M. BOROCHOV, RONEN STEVEN BOROCHOV, JOSEF S. BOROCHOV, YOAV GOLAN AND ROTEM SHOSHANA GOLAN
### ASSAULT

110.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

111.    The Hebron Terrorist Attack caused Plaintiff Eli fear and apprehension of harm and death, and actual physical harm, and constituted an assault on the person of Plaintiff Eli.

112.    The Hebron Terrorist Attack caused Plaintiffs Ronen and Josef, who were with Eli at the time of the terrorist attack, fear and apprehension of harm and death, and constituted an assault on the person of Plaintiffs Ronen and Josef.

113.    The Hebron Terrorist Attack and the Bus Stop Terrorist Attack and assault on their persons, which were direct and proximate results of defendants' actions, caused Plaintiffs mental anguish and caused Plaintiffs Eli, Yoav and Rotem actual physical injury and pain and suffering.

114.    Defendants are therefore jointly and severally liable for the full amount of Plaintiffs' Eli, Yoav and Rotem's damages.

115.    The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

## FOURTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

116.   The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

117.   Defendants' conduct was willful, outrageous and dangerous to human life, and violates applicable criminal law, all international standards of civilized human conduct and common decency.

118.   Defendants intended to, and did in fact, terrorize the Plaintiffs, and cause them egregious emotional distress.

119.   As a result, and by reason of the three terrorist attacks, which were caused by the actions of defendants described herein, Plaintiffs have suffered and will continue to suffer terror, severe mental anguish, bereavement and grief, and injury to their feelings.

120.   Defendants are therefore jointly and severally liable for the full amount of Plaintiffs' damages. The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

## FIFTH CLAIM FOR RELIEF
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

121.   The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

122.   Defendants' conduct was willful, outrageous and/or grossly negligent, and was dangerous to human life and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

-23-

123.    Defendants' conduct terrorized the Plaintiffs and caused them egregious emotional distress.

124.    Defendants are therefore jointly and severally liable for the full amount of Plaintiffs' damages. The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

**SIXTH CLAIM FOR RELIEF**
**CIVIL CONSPIRACY**

125.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

126.    The defendants knowingly and willingly conspired, agreed and acted in concert with each other and with Hamas in a common plan and design to facilitate and cause acts of international terrorism, extrajudicial killing and personal injury including the Hebron Terrorist Attack and the Bus Stop Terrorist Attack, which harmed Plaintiffs. As a result of the Hebron Terrorist Attack and the Bus Stop Terrorist Attack caused, resulting from and facilitated by the conspiracy between the defendants and Hamas, Plaintiffs suffered the damages enumerated herein.

127.    Defendants are therefore jointly and severally liable for the full amount of Plaintiffs' damages.

**SEVENTH CLAIM FOR RELIEF**
**AIDING AND ABETTING**

128.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

129.     The defendants provided Hamas with material support and resources within the meaning of 28 U.S.C. §1605A, and other substantial aid and assistance, in order to aid, abet, facilitate and cause the commission of acts of international terrorism, extrajudicial killing and personal injury including the Hebron Terrorist Attack and the Bus Stop Terrorist Attack which harmed the Plaintiffs.

130.     As a result of the Hebron Terrorist Attack and the Bus Stop Terrorist Attack caused, resulting from and facilitated by the defendants' provision of material support and resources and other acts of aiding and abetting, Plaintiffs suffered the damages enumerated herein. Defendants are therefore jointly and severally liable for the full amount of Plaintiffs' damages.

**EIGHTH CLAIM FOR RELIEF**
**AGAINST THE IRANIAN DEFENDANTS**
**VICARIOUS LIABILITY/RESPONDEAT SUPERIOR**

131.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

132.     At all relevant times, defendant MOIS was an agent and/or office of defendant Iran, acting within the scope of its agency and/or office. Defendant MOIS engaged in the acts described herein within the scope of its agency and/or office and to further the interests of defendant Iran.

133.     Defendant Iran authorized, ratified and/or condoned the conduct of defendant MOIS.

134.     Therefore, defendant Iran is vicariously liable for the acts of defendant MOIS.

135.     The Iranian defendants are therefore jointly and severally liable for the full amount of Plaintiffs' damages, in such sums as may be hereinafter determined.

## JURY DEMAND

136.     Plaintiffs demand trial by jury of all issues legally triable to a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs demand judgment as follows:

a)       Judgment against all defendants, jointly and severally, for compensatory damages in an amount to be determined at trial;

b)       Judgment against all defendants, jointly and severally, for punitive damages in an amount to be determined at trial;

c)       Plaintiffs' costs and expenses;

d)       Plaintiffs' attorneys' fees;

e)       Pre-judgment interest; and

f)       Such other and further relief as the Court finds just and equitable.

WHEREFORE, plaintiffs demand judgment as follows: Judgment against all defendants, jointly and severally, for compensatory damages in an amount to be determined at trial;

(a)    Judgment against all defendants, jointly and severally, for punitive damages in an amount to be determined at trial; Plaintiffs' costs and expenses; Plaintiffs' attorneys fees; and

(b)    Such other and further relief as the Court finds just and equitable.

Dated: Brooklyn, New York
       December 19, 2019February 8, 2021

                              Respectfully submitted,

                              THE BERKMAN LAW OFFICE, LLC
                              *Attorneys for Plaintiffs*


                              By: _____
                                   Robert J. Tolchin
                                   (D.C. Bar #NY0088)

                              111 Livingston Street, Suite 1928
                              Brooklyn, New York 11201
                              (718) 855-3627

                              NITSANA DARSHAN-LEITNER & CO.
                              Nitsana Darshan-Leitner
                              *Israeli counsel for the Plaintiffs*
                              10 Hata'as Street
                              Ramat Gan, 52512 Israel
                              Israeli #: 011-972-3-7514175
                              U.S. #: 212-591-0073