**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

------------------------------------------------------------------ X

MARK, *et al.*,

                 Plaintiffs,                  Docket No: 19-cv-2855 (TNM)

             -against-

THE ISLAMIC REPUBLIC OF IRAN, *et al.*,

                 Defendants.

------------------------------------------------------------------ X

---

**PLAINTIFFS' MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION FOR JUDGMENT BY DEFAULT**

---

THE BERKMAN LAW OFFICE, LLC
*Attorneys for the Plaintiffs*
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627

**TABLE OF CONTENTS**

I.     Introduction ..................................................................................................................3

II.    Legal Standards for Default Judgments Under the FSIA ................................................4

     Personal Jurisdiction ....................................................................................................5

     Subject Matter Jurisdiction ..........................................................................................7

     Satisfactory Evidence to Establish Plaintiffs' Claims and Damages ..............................10

        A.    Pain and Suffering ...........................................................................13

        B.    Solatium Damages ...........................................................................15

        C.    Punitive Damages ............................................................................19

        E.    Findings of Fact and Conclusions of Law ........................................20

III.    The Court May Refer the Assessment of Damages to a Special Master ........................21

IV.    The Court Should Award Pre-Judgment Interest ...........................................................21

Conclusion ..................................................................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Acosta v. Islamic Rep. of Iran*, 574 F. Supp. 2d 15 (D.D.C. 2008) ..................................8, 11, 15

*Alejandre v. Rep. of Cuba*, 996 F. 1239 (S.D. Fla. 1997)............................................................12

*Anderson v. Islamic Rep. of Iran*, 753 F. Supp. 2d 68 (D.D.C. 2010)........................................17

*Antoine v. Atlas Turner, Inc.*, 66 F.3d 105 (6th Cir. 1995)..........................................................12

*Baker v. Socialist People's Libyan Arab Jamahirya,* 775 F. Supp. 2d 48 (D.D.C. 2011).....19, 20

*Beer v. Islamic Rep. of Iran*, 798 F. Supp. 2d 14 (D.D.C. 2011)................................................20

*Bodoff v. Islamic Rep. of Iran,* 907 F. Supp. 2d 93 (D.D.C. 2012) ............................................19

*Braun v. Islamic Rep. of Iran*, 228 F. Supp. 3d 64 (D.D.C. 2017) ....................4, 5, 7, 11, 15, 18

*Brayton v. U.S. Trade Rep.*, 641 F. Supp. 3d 521 (D.C. Cir. 2011) ...........................................15

*Brewer v. Islamic Rep. of Iran*, 664 F. Supp. 2d 43 (D.D.C. 2009)  ....................................5, 6, 7

*Calderon-Cardona v. Democratic Rep. of Korea*, 723 F. Supp. 2d 441 (D.P.R. 2010)..........7, 11

*Campuzano v. Islamic Rep. of Iran*, 281 F. Supp. 2d 258 (D.D.C. 2003) ................10, 12, 17, 18

*Cohen v. Iran*, 268 F. Supp. 3d 19 (D.D.C. 2017).....................................................................16

*Cohen v. Islamic Rep. of Iran*, 238 F. Supp. 3d 71 (D.D.C. 2017)................................................5

*Commercial Bank of Kuwait v. Rafidain Banks,* 15 F.3d 238 (2d Cir. 1994)............................12

*Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F. Supp. 2d 415 (D.C. Cir. 1991)................4, 5

*Elahi v. Islamic Rep. of Iran*, 124 F. Supp. 2d 97 (D.D.C. 2000)...............................................12

*Estate of Botvin ex rel. Ellis v. Islamic Rep. of Iran,* 604 F. Supp. 2d 22 (D.D.C. 2009) ...........11

*Estate of Botvin v. Islamic Rep. of Iran*, 510 F. Supp. 2d 101 (D.D.C. 2007)............................11

*Estate of Doe v. Islamic Republic of Iran*, 943 F. Supp. 2d 180 (D.D.C. 2013) ........................22

*Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 30 (D.D.C. 2009) ......................20

*Fain v. Islamic Rep. of Iran*, 856 F. Supp. 2d 109 (D.D.C. 2012)...............................................18

*Flatow v. Islamic Rep. of Iran*, 999 F. Supp. 1 (D.D.C. 1998)...........................................12, 15

*Force v. Islamic Rep. of Iran,* Civ. No. 16-cv-1468 (D.D.C. 2020) ....................................*passim*

*Forman v Korean Air Lines Co.,* 84 F.3.d 446 (D.C. Cir. 1996).....................................................22

*Fraenkel v. Islamic Rep. of Iran*, 892 F. Supp. 3d 348 (D.C. Cir. 2018)..............................15, 18

*Gates v. Syrian Arab Rep.*, 580 F. Supp. 2d 53 (D.D.C. 2008) .............................................11, 20

*Gates v. Syrian Arab Rep.*; 646 F. Supp. 3d 1 (D.C. Cir. 2011).....................................................7

*Gill v. Islamic Rep. of Iran*, 249 F. Supp. 3d 88 (D.D.C. 2017).................................................18

*Haim v. Islamic Rep. of Iran,* 425 F. Supp. 2d 56 (D.D.C. 2006) ................................................15

*Han Kim v. Democratic People's Rep. of Korea*, 774 F.3d 1004 (D.C. Cir. 2014) ...................11

*Harrison v. Rep. of Sudan*, 882 F. Supp. 2d 23 (D.D.C. 2012) ....................................................15

*Hekmati v. Iran*, 278 F. Supp. 3d 145 (D.D.C. 2017)...................................................................16

*Hill v. Iraq*, 328 F.3d 680 (D.C. Cir. 2003) ...........................................................................11, 13

*James Madison Ltd by Hecht v. Ludwig*, 82 F. Supp. 3d 1085 (D.C. Cir. 1996) ..........................4

*Jerez v. Rep. of Cuba*, 775 F.3d 419 (D.C. Cir. 2014).................................................................11

*Kaplan v. Central Bank of Islamic Rep. of Iran,* 55 F. Supp. 3d 189 (D.D.C. 2014).................21

*Kim v. Democratic People's Rep. of Korea,* 87 F. Supp. 3d 286 (D.D.C. 2105) ........................12

*Leibovitch v. Islamic Rep. of Iran,* 697 F.3d 561 (7th Cir. 2012)..................................................8

*Mohammadi v. Islamic Rep. of Iran*, 782 F. Supp. 3d 9 (D.C. Cir. 2015)....................................7

*Moradi v. Iran*, 77 F. Supp. 3d 57 (D.D.C. 2015) ......................................................................16

*Murphy v. Islamic Rep. of Iran*, 740 F. Supp. 2d 51 (D.D.C. 2010)......................................13, 19

*Mwani v. Bin Laden*, 417 F.3d 1 (DC. Cir. 2005).........................................................................4

*Opati v. Rep. of Sudan*, 60 F. Supp. 3d 68 (D.D.C. 2014) .........................................................22

*Peterson v. Islamic Rep. of Iran*, 515 F. Supp. 2d 25 (D.D.C. 2007) ...................................13, 14

*Reed v. Islamic Rep. of Iran*, 845 F. Supp. 2d 204 (D.D.C. 2012) ......................................15, 22

*Rimkus v. Islamic Rep. of Iran*, 750 F. Supp. 2d 163 (D.D.C. 2010) ...................................11, 12

*Roth v. Islamic Rep. of Iran*, 78 F. Supp. 3d 379 (D.D.C. 2015)..........................................11, 13

*Salazar v. Islamic Rep. of Iran*, 370 F. Supp. 2d 116 (D.D.C. 2005) .........................................13

*Spencer v. Islamic Rep. of Iran*, 922 F. Supp. 2d 108 (D.D.C. 2013) .........................................21

*Spencer v. Islamic Rep. of Iran*, 71 F. Supp. 3d 23 (D.D.C. 2014) .............................................20

*Stansell v. Rep. of Cuba,* 217 F. Supp. 3d 320 (DDC 2016).........................................................16

*Turley v. ISG Lackawanna*, 774 F.3d 140 (2d Cir. 2014)...........................................................15

*Valore v. Islamic Rep. of Iran*, 700 F. Supp. 2d 52 (D.D.C. 2010) ...........................7, 14, 15, 20

*Wachsman v. Islamic Rep. of Iran*, 603 F. Supp. 2d 148 (D.D.C. 2009)....................................12

*Wamai v. Rep. of Sudan*, 60 F. Supp. 3d 84 (D.D.C. 2014) ........................................................21

*Weinstein v. Islamic Rep. of Iran*, 175 F.Supp.2d 13 (D.D.C. 2001) ……………………….…..12

*Worley v. Islamic Rep. of Iran*, 75 F. Supp. 3d 311 (D.D.C. 2014)......................................11, 21

*Wultz v. Islamic Rep. of Iran*, 864 F. Supp. 2d 24 (D.D.C. 2012) ...........................13, 14, 15, 20

*Wyatt v. Syrian Arab Rep.*, 908 F. Supp. 2d 216 (D.D.C. 2012) ............................................7, 20

## **Statutes**

8 U.S.C. § 1101(a)(22).............................................................................................................8, 17

28 U.S.C. § 1330..............................................................................................................................5

28 U.S.C. § 1350 note .................................................................................................................9, 18

28 U.S.C. § 1602..............................................................................................................................3

28 U.S.C. § 1604 ................................................................................................4

28 U.S.C. § 1608 .........................................................................................*passim*

28 U.S.C. § 1605A .......................................................................................*passim*

18 U.S.C. 2339A ...............................................................................................9

Fed. R. Civ. P. 4(j)(1) .......................................................................................5

Fed. R. Civ. P. 55(d) .......................................................................................11

## **Other Authority**

U.S. Dep't of State, State Sponsors of Terrorism,
      https://www.state.gov/j/ct/list/c14151.htm .................................................17

Restatement (Second) of Torts § 908(1) (1977) ........................................19

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR JUDGMENT BY DEFAULT

Plaintiffs respectfully submit this Memorandum in support of their Motion for Default Judgment against The Islamic Republic of Iran ("Iran") and The Syrian Arab Republic ("Syria") pursuant to 28 U.S.C. § 1608(e); and their request to refer the assessment of damages to a special master pursuant to 28 U.S.C. § 1605A(e).

Also submitted in support of Plaintiff's motion are the following documents:

## Documents Unique to This Case

| | |
|---|---|
| Dkt. 31 | Declaration of Devora Sue Borochov |
| Dkt. 32 | Declaration of Eli M. Borochov |
| Dkt. 33 | Declaration of Avraham M. Borochov |
| Dkt. 34 | Declaration of Josef S. Borochov |
| Dkt. 35 | Declaration of Ronen Steven Borochov |
| Dkt. 36 | Declaration of Shari Mayer |
| Dkt. 37 | Declaration of Shira Nechama Borochov |
| Dkt. 38 | Declaration of Yoav Golan |
| Dkt. 39 | Declaration of Efrat Fishfeder |
| Dkt. 40 | Declaration of Ohad Fishfeder |
| Dkt. 41 | Declaration of Omer Fishfeder |
| Dkt. 42 | Declaration of Shiri Fishfeder |
| Dkt. 43 | Declaration of Matan Golan |
| Dkt. 44 | Declaration of Nadav Golan |
| Dkt. 45 | Declaration of Raphael Golan |
| Dkt. 46 | Declaration of Rotem Shoshana Golan |

Dkt. 47          Declaration of Yael Golan Inbar

Dkt. 48          Declaration of Yehudit Golan

Dkt. 49          Declaration of Shai Fishfeder

Dkt. 50          Dr. Rael Strous' Combined Expert Report regarding all plaintiffs (Exhibit 1)

Dkt. 50          Psychiatric Evaluation of Avraham M. Borochov (Exhibit 3)

Dkt. 50          Psychiatric Evaluation of Devora Sue Borochov (Exhibit 4)

Dkt. 50          Psychiatric Evaluation of Eli M. Borochov (Exhibit 5)

Dkt. 50          Psychiatric Evaluation of Josef S. Borochov (Exhibit 6)

Dkt. 50          Psychiatric Evaluation of Ronen Steven Borochov (Exhibit 7)

Dkt. 50          Psychiatric Evaluation of Shari Mayer (Exhibit 8)

Dkt. 50          Psychiatric Evaluation of Shira Nechama Borochov (Exhibit 9)

Dkt. 51          Psychiatric Evaluation of Efrat Fishfeder (Exhibit 3)

Dkt. 51          Psychiatric Evaluation of Matan Golan (Exhibit 4)

Dkt. 51          Psychiatric Evaluation of Nadav Golan (Exhibit 5)

Dkt. 51          Psychiatric Evaluation of Ohad Fishfeder (Exhibit 6)

Dkt. 51          Psychiatric Evaluation of Omer Fishfeder (Exhibit 7)

Dkt. 51          Psychiatric Evaluation of Rafael Golan (Exhibit 8)

Dkt. 51          Psychiatric Evaluation of Rotem Shoshana Golan (Exhibit 9)

Dkt. 51          Psychiatric Evaluation of Shai Fishfelder (Exhibit 10)

Dkt. 51          Psychiatric Evaluation of Shiri Fishfeder (Exhibit 11)

Dkt. 51          Psychiatric Evaluation of Yael Golan Inbar (Exhibit 12)

Dkt. 51          Psychiatric Evaluation of Yehudit Golan (Exhibit 13)

Dkt. 51          Psychiatric Evaluation of Yoav Golan (Exhibit 14)

Dkt. 53          Declaration of Dr. Alan Friedman regarding Eli M. Borochov. (Exhibit B)

Dkt. 53          Declaration of Dr. Alan Friedman regarding Yoav Golan. (Exhibit C)

Dkt. 53          Declaration of Dr. Alan Friedman regarding Rotem Shoshana Golan. (Exhibit D)

Dkt. 54          Declaration of Colonel (ret.) Aryeh Spitzen

**Evidence Previously Submitted in _Force v. Islamic Rep. of Iran_, DDC 16-cv-1468**

Dkt. 29          Declaration of Benedetta Berti

Dkt. 30          Declaration of Dr. Marius Deeb

Dkt. 31          Declaration of Dr. Matthew Levitt

Dkt. 32          Declaration of Dr. Patrick Clawson

Dkt. 34          Declaration of Boaz Shnoor

## I.

## INTRODUCTION

This is a civil action brought pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 _et seq_. Plaintiffs are the victims and families of U.S. nationals injured in two separate terror attacks between 2015 and 2016.[1]

On September 24, 2019, Plaintiffs filed a Complaint against Iran and Syria seeking damages pursuant to 28 U.S.C. § 1605A for their provision of material support to Hamas that contributed to the terrorist attacks at issue in this case. (Dkt. 1). On December 19, 2019, the Mark, Batt and Hirschfeld plaintiffs were discontinued from the lawsuit. (Dkt. 4). On December 22, 2019, the remaining Plaintiffs filed an Amended Complaint against Iran and Syria seeking the same relief but also now seek pre-judgment interest. (Dkt. 6).

Service upon Defendants was perfected under § 1608(a), which governs service on foreign states. Specifically, service upon Syria was attempted by DHL via 28 U.S.C. § 1608(a)(3) through

---

[1] Plaintiffs are not pursuing the claims of the Goldwater, Gorfinkle and Jacobson plaintiffs nor the claims of Ester and David Fishfeder.

delivery of the required documents (translated into Arabic) to its agent via international courier service. (Dkt. 7, 8, 12). Service upon Iran was attempted by DHL via 28 U.S.C. § 1608(a)(3) through delivery of the required documents (translated into Farsi). (Dkt. 7, 8, 12). Because DHL refused to accept the parcels as it no longer delivers to Iran and Syria, service of process via 28 U.S.C. § 1608(a)(3) was not accomplished on defendants. (Dkt. 12). Plaintiffs also attempted service of process on defendants via 28 U.S.C. § 1608(a)(3) by having the Clerk of the Court serve the documents through the U.S. Postal Service but the Clerk's office advised Plaintiffs' counsel that it was unable to do so in a manner that complies with 28 U.S.C. § 1608(a)(3). (Dkt. 8, 12). Subsequently, service via 28 U.S.C. § 1608(a)(4) through diplomatic channels on Defendant Iran[2] was accomplished on August 19, 2020 and was accomplished on Syria on August 10, 2020. (Dkt. 10, 11, 18). The diplomatic notes provide appropriate proof of service as to Iran and Syria. (Dkt. 11, 12, 18). The Clerk noted the default of Iran and Syria on February 5, 2021. (Dkt. 23, 24).

## II.

## LEGAL STANDARDS FOR DEFAULT JUDGMENTS UNDER THE FSIA

Entry of default judgments in FSIA terrorism cases is not automatic. *Mwani v. Bin Laden*, 417 F.3d 1, 6 (DC. Cir. 2005); *Braun v. Islamic Rep. of Iran*, 228 F. Supp. 3d 64 (D.D.C. 2017); *James Madison Ltd by Hecht v. Ludwig*, 82 F. Supp. 3d 1085, 1092 (D.C. Cir. 1996); *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F. Supp. 2d 415, 424 (D.C. Cir. 1991). Foreign sovereigns are generally immune from suit in U.S. courts. 28 U.S.C. § 1604. The FSIA, however, provides narrow exceptions to this general rule. When the requirements of one of these exceptions are met and the foreign state is properly served, the FSIA waives sovereign immunity and provides both

---

[2] Although the Iranian Ministry of Information and Security ("MOIS") was named as a defendant, service on MOIS was not accomplished. Plaintiffs are not pursuing a claim against MOIS.

subject-matter jurisdiction over the action and personal jurisdiction over the foreign state. 28 U.S.C. § 1604; *Cohen v. Islamic Rep. of Iran*, 238 F. Supp. 3d 71, 80 (D.D.C. 2017); *Braun*, 228 F. Supp. 3d at 74.

As such, in an FSIA case, a default judgment may only be entered when the Court is satisfied that (1) it has subject matter jurisdiction over the claims, (2) personal jurisdiction is properly exercised over the defendants, (3) the plaintiffs have presented satisfactory evidence to establish their claims against the defendants, and (4) the plaintiffs have satisfactorily proven that they are entitled to the monetary damages they seek. *Id*. at 74.

Plaintiffs have satisfied all four requirements sufficient to establish their claims as well as their damages against the defendants, thereby entitling them to a default judgment.

## **Personal Jurisdiction**

While plaintiffs have the burden of proving personal jurisdiction, they "can satisfy that burden with a *prima facie* showing.'" *Edmond*, 949 F. Supp. 2d at 424. In doing so, "they may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Id*.

Federal statute grants district courts personal jurisdiction over foreign states wherever "service has been made under section 1608 of [Title 28]." 28 U.S.C. § 1330(a); *see also* Fed. R. Civ. P. 4(j)(1). Section 1608(a) prescribes several alternative methods to serve a foreign state in decreasing order of preference. § 1608(a); *see generally Brewer v. Islamic Rep. of Iran*, 664 F. Supp. 2d 43, 50-51 (D.D.C. 2009) (discussing service of process under § 1608 in an FSIA terrorism case against a foreign state).

Service on Syria under §1608(a)(1) and (a)(2) are impossible because no pertinent "special arrangement" exists with Syria and no "international convention" is applicable as to Syria.

Plaintiffs complied with the requirements of §1608(a)(3) by attempting service upon Iran and Syria with copies of the Summons, Complaint, and Notice of Suit, along with a translation of each in Farsi and Arabic via DHL, using a form of mailing requiring a signed receipt, but DHL refused to accept the parcels as it no longer will deliver mail to Iran and Syria. (Dkt. 7, 8, 12). *See* § 1608(a)(3). Plaintiffs attempted through the Court's clerk to mail the Summons, Complaint, and Notice of Suit, along with a translation of each in Farsi and Arabic via registered mail via the US Postal Service, but the Court's clerk advised on January 28, 2020 that there is no way for the Court's clerk's office to serve process in a manner that complies with § 1608(a)(3). (Dkt. 8, 12). As such, this court has personal jurisdiction over Syria and Iran. *See Brewer*, 664 F. Supp. 2d at 51. Similarly, Plaintiffs complied with the requirements of § 1608(a)(4) by requesting the State Department effect service on Syria and Iran of the Summons, Complaint and Notice of Suit, along with a translation of each in Arabic and Farsi via diplomatic means on January 28, 2020. (Dkt. 10, 11). The clerk mailed the relevant documents to the State Department. On September 15, 2020, the State Department informed the clerk that the documents had been delivered to Iran. (Dkt. 15). As the State Department advised, "[b]ecause the United States does not maintain diplomatic relations with the government of Iran," the Department of State is assisted by the Foreign Interests Section of the Embassy of Switzerland in Tehran in delivery these documents to the Iranian Ministry of Foreign Affairs. The documents were delivered to the Iranian Ministry of Foreign Affairs under cover of diplomatic note No. 1143-IE, dated August 16, 2020 and delivered on August 19, 2020." (Dkt. 15). On October 2, 2020, the State Department informed the clerk that the documents had been delivered to Syria. (Dkt. 18). As the State Department advised, "[b]ecause the United States Embassy Operations in the Syrian Arab Republic are currently suspended, the Department of State is assisted by the Foreign Interests Section of the Embassy of the Czech

Republic in Damascus in the delivering these documents to the Syrian Ministry of Foreign Affairs." (Dkt. 18). "These documents were delivered to the Syrian Ministry of Foreign Affairs under cover of diplomatic note No. 1276/2020, dated August 9, 2020 and delivered on August 10, 2020." (Dkt. 18). After Iran and Syria failed to respond, the Clerk entered a default. (Dkt. 23, 24). Accordingly, this court has personal jurisdiction over Iran and Syria, and these defendants are in default.

## Subject Matter Jurisdiction

In 2008 Congress enacted a comprehensive terrorism exception to the FSIA that waived a foreign state's sovereign immunity and provided terrorism victims with a cause of action in cases involving certain types of state sponsored terrorism. *See Brewer*, 664 F. Supp. 2d 43, 51 (D.D.C. 2009). This terrorism exception is now codified as 28 U.S.C. § 1605A and has previously been applied to both Iran and Syria where numerous courts have found those countries have supported terrorist attacks that harmed American nationals. *See, e.g. Braun*, 228 F. Supp. 3d 64; *Valore v. Islamic Rep. of Iran*, 700 F. Supp. 2d 52 (D.D.C. 2010); *Gates v. Syrian Arab Rep.*; 646 F. Supp. 3d 1 (D.C. Cir. 2011); *Wyatt v. Syrian Arab Rep.*, 736 F. Supp. 2d 106 (D.D.C. 2010). *See also Calderon-Cardona v. Dem. People's Rep. of Korea*, 723 F. Supp. 2d 441, 457 (D.P.R. 2010).

Specifically, the terrorism exception, covering claims against designated state sponsors of terrorism, provides that:

> A foreign state shall not be immune…[when] money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing…or the provision of material support or resources for such an act if…engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1); *Brewer*, 664 F. Supp. 2d at 50; *Mohammadi v. Islamic Rep. of Iran*, 782 F. Supp. 3d 9, 13 (D.C. Cir. 2015).

The FSIA also creates a "private right of action" for U.S. nationals.[3] 28 U.S.C. § 1605A(c). In actions brought under § 1605A(c), American nationals harmed by state-sponsored terrorism may seek "money damages" including economic damages, solatium, pain, and suffering, and punitive damages." *Id.*

First, both Iran and Syria "were designated as a state sponsor of terrorisms at the time of the act" that caused Plaintiffs' harm. Section 1605A(h)(6) defines a "state sponsor of terrorism" as "a country the government of which the Secretary of State has determined, for purposes of section 6(j) of the Export Administration Act of 1979 (50 App. U.S.C. 2405(j))...is a government that has repeatedly provided support for acts of international terrorism." Iran has been so designated continuously since 1984 and Syria has been so designated continuously since 1979.

Second, the victims are American nationals except Rotem Golan. The victims and family members who are U.S. nationals, are seeking money damages for personal injuries arising from terrorist attacks that were committed by Hamas, and materially supported by Iran and Syria. The Court has jurisdiction over the claims of the non-American Plaintiff because he is seeking damages for their injuries resulting from the terror attacks affecting their respective family members who are U.S. nationals. 28 U.S.C. § 1605A(a)(2)(A)(ii)(I). *Leibovitch v. Islamic Rep. of Iran*, 697 F.3d 561, 568-573 (7th Cir. 2012) (finding FSIA subject matter jurisdiction and liability for claims of non-U.S. citizen family members of victim who was a U.S. citizen); *Acosta v. Islamic Rep. of Iran*, 574 F. Supp. 2d 15, 26 (D.D.C. 2008) (holding immunity abrogated and subject matter jurisdiction conferred for claims under the FSIA if "either the plaintiff or the victim [was] a U.S. national at the time of the act of terrorism occurred.").

---

[3] "National" is defined as "the meaning given that term in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. § 1101(a)(22))" 28 U.S.C. § 1605A(h)(5).

Third, FSIA Section 1605A(H)(3) defines "material support or resources" as having the same meaning as in 18 U.S.C. 2339A. The latter statutes defines "material support or resources" broadly to include:

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safe houses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (one or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

§ 2339(b)(1). It further defines "training" as "instruction or teaching designed to impart a specific skill, as opposed to general knowledge" and defines "expert advice or assistance" as "advice or assistance derived from scientific, technical or other specialized knowledge." § 2339A(b). The allegations in Plaintiffs' Complaint and the evidence presented by Plaintiffs leaves no doubt that the Iranian and Syrian Defendants provided material support to Hamas. Among other things, Iran and Syria provided Hamas with funding assistance. *See* declaration of Plaintiffs' liability expert, Colonel (ret.) Aryeh Spitzen (Dkt. 54). *See also* the declarations of Dr. Benedetta Berti, Dr. Marius Deeb, Dr. Matthew Levitt and Dr. Patrick Clawson filed in *Force v. Islamic Rep. of Iran, et al.*, Dkt. 29-33, Civ. No. 16-cv-1468, upon which Plaintiffs rely in this case.

Fourth, Congress specifically permitted actions for "*personal injury…that was caused by an act of…extrajudicial killing*." § 1605A(a)(1) (emphasis added). Plaintiffs' injuries were indeed caused by "an act of…extrajudicial killing" within the meaning of 28 U.S.C. § 1605(A)(a)(1) as that term is defined by § 1605A(h)(7), which adopts the definition of extrajudicial killing contained in the Torture Victims Protection Act ("TVPA") (codified as a note to 28 U.S.C. § 1350). The TVPA defines "extrajudicial killings" as 'a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all judicial guarantees which are

recognized as indispensable by civilized peoples." Thus, § 1605A(a)(1) does not require that the plaintiff be killed or that injury to a plaintiff result from the actual "extrajudicial killing" (e.g. that a bullet pass through and kill one person and strike and injure another) but rather from an "act of extrajudicial killing". *See Campuzano v. The Islamic Rep. of Iran*, 281 F. Supp. 2d 258, 270-71 (D.D.C. 2003) (holding that injuries suffered by plaintiffs who were injured in a bombing in which non-plaintiffs were killed were caused by an act of extrajudicial killing within the meaning of FSIA § 1605(a)(7)). Thus, where a terrorist commits an act that could kill but winds up merely injuring the victim, the terrorist has nevertheless committed an "act of extrajudicial killing," and the victim can recover for "personal injury" under § 1605A(a)(1).

Fifth, as required by § 1605A(a)(1) and (c), all the Plaintiffs' claims arise from a personal injury. The damages they may seek include "economic damages, solatium, pain and suffering, and punitive damages." § 1605A(c). In addition, Plaintiffs may raise claims for related "foreseeable property loss, whether insured or uninsured, third party liability, and loss claims under life and property insurance policies." § 1605A(d).

Therefore, this Court has jurisdiction over, and Defendants are not immune from, this action.[4]

## Satisfactory Evidence to Establish Plaintiffs' Claims and Damages

The FSIA requires that a default judgment against a foreign state be entered only after a plaintiff "establishes his claim or right to relief by evidence that is satisfactory to the Court." 28 U.S.C. § 1608(e). This has been interpreted to impose the same standard for entry of default judgments against the U.S. government as set forth in Fed. R. Civ. P. 55(d) (previously Rule

---

[4] Because the attacks did not occur within the Iranian or Syrian territory, Plaintiffs are not required to offer Defendants an opportunity to arbitrate. *See* 28 U.S.C. § 1605A(a)(A)(iii).

55(e)).[5] While the "FSIA leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide, requiring only that it be 'satisfactory to the court,'" courts must be mindful that Congress enacted § 1605A with the "aim[ ] to prevent state sponsors of terrorism-entities particularly unlikely to submit to this country's laws-from escaping liability for their sins." *Han Kim v. Democratic People's Rep. of Korea*, 774 F.3d 1004, 1047-48 (D.C. Cir. 2014) (quoting 28 U.S.C. 1608(e)). With this objective in mind, the D.C. Circuit has instructed that "courts have the authority-indeed, we think, the obligation-to 'adjust [evidentiary requirements] to…differing situations.'" *Braun*, 228 F. Supp. 3d at 64 (quoting *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C. Cir. 1981)); *Hill v. Iraq*, 328 F.3d 680, 684-85 (D.C. Cir. 2003).

Therefore, although the Court may not simply accept a complaint's unsupported allegations as true, it may, and perhaps must, *see Hill*, 328 F. Supp. 3d at 684-85, "rely upon unconverted factual allegations that are supported by affidavits." *Worley v. Islamic Rep. of Iran*, 75 F. Supp. 3d 311, 319 (D.D.C. 2014); *Braun*, 228 F. Supp. 3d at 64; *Acosta*, 574 F. Supp. 2d at 15; *Roth v. Islamic Rep. of Iran*, 78 F. Supp. 3d 379, 386 (D.D.C. 2015) ("Courts may rely on uncontroverted factual allegations that are supported by affidavits.") (citing *Rimkus v. Islamic Rep. of Iran*, 750 F. Supp. 2d 163, 171 (D.D.C. 2010)); *Gates*, 580 F. Supp. 2d 53, 63 (D.D.C. 2008) (quoting *Estate of Botvin*, 510 F. Supp. 2d 101, 103 (D.D.C. 2007)); aff'd, 646 F.3d 1 (D.D.C. 2011); *Elahi v. Islamic Rep. of Iran*, 124 F. Supp. 2d 97, 100 (D.D.C. 2000) (citing *Alejandre v. Rep. of Cuba*, 996 F. 1239, 1243 (S.D. Fla. 1997)), *see also Flatow v. Islamic Rep. of Iran*, 999 F. Supp. 1 (D.D.C.

---

[5] *Jerez v. Rep. of Cuba*, 775 F.3d 419, 423 (D.C. Cir. 2014); *see also* H.R. REP. No. 94-1487, at 26 (1976) (stating that § 1608(e) establishes "the same requirement applicable to default judgments against the U.S. government under rule 55(e), F.R. Civ. P."); *Estate of Botvin ex rel. Ellis v. Islamic Rep. of Iran*, 604 F. Supp. 2d 22, 26 (D.D.C. 2009); *Calderon-Cardona*, 723 F. Supp. 2d 441, 444 (D.P.R. 2010).

1998). Plaintiffs are therefore entitled to establish their proof in FSIA default judgment proceedings via affidavits and expert reports. *Wachsman v. Islamic Rep. of Iran*, 603 F. Supp. 2d 148 (D.D.C. 2009), *Campuzano*, 281 F. Supp. 2d at 268.

Plaintiffs note that the FSIA does not require evidentiary hearings or explicit findings "where the record shows that the plaintiffs provided sufficient evidence in support in support of its claims." *Commercial Bank of Kuwait v. Rafidain Banks*, 15 F.3d 238, 242 (2d Cir. 1994); *see also Kim v. Democratic People's Rep. of Korea*, 774 F. Supp. 3d 1044 (D.C. Cir. 2014) (relying on affidavits in reversing and remanding for District Court to enter a default judgment without an evidentiary hearing); *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 111 (6th Cir. 1995) ("Use of affidavits in granting default judgments does not violate either due process or the FSIA").

Plaintiffs submit they have fully supported their motion with the sworn expert declaration of Arieh Dan Spitzen, Israel Defense Forces Colonel (ret.) regarding Hamas' responsibility for the two attacks in this case. Plaintiffs also rely upon the declarations of Dr. Patrick Clawson and Dr. Matthew Levitt regarding Iran's provision of material support to Hamas and the declaration of Dr. Marius Deeb and Dr. Benedetta Berti regarding Syria's provision of material support to Hamas submitted in *Force v. Islamic Rep. of Iran, et al.*, Dkt. 29-32, Civ No. 16-14688.[6] Plaintiffs further rely upon the declaration of Dr. Boaz Shnoor regarding the application of Israeli law which governs

---

[6] Although prior decisions in this district "have…frequently taken judicial notice of earlier, related proceedings," *Rimkus v. Islamic Rep. of Iran*, 750 F. Supp. 2d 163, 171 (D.D.C. 2010), that does not mean that the Court should simply accept the facts found in the earlier opinion, which would amount to an exercise of collateral estoppel. *See Weinstein v. Islamic Rep. of Iran*, 175 F. Supp. 2d 13, 20 (D.D.C. 2001) ("[F]indings of fact made during this type of one-sided [FSIA] hearing should not be given a preclusive effect.") The Court may, however, "review evidence considered in" the prior proceeding "without necessitating the re-presentment of such evidence." *Murphy v. Islamic Rep. of Iran*, 740 F. Supp. 2d 51, 59 (D.D.C. 2010). *See Salzman v. Islamic Rep. of Iran*, 2019 U.S. Dist. LEXIS 163632, *8 (D.D.C. 2019).

the damages claims of non-U.S. national family members of U.S.-national victims used in *Force v. Islamic Rep. of Iran, et al.*, Dkt. 34, Civ No. 16-14688. Plaintiffs have also submitted sworn declarations from each Plaintiff regarding the attack as well as their damages and sworn declarations from Dr. Rael Strous, MD, a psychiatric expert regarding each Plaintiff's psychological and emotional damages, and sworn declarations from Dr. Alan Friedman, MD, a medical expert, regarding Eli Borochov's, Yoav Golan's and Rotem Golan's physical injuries. (Dkt. 30, 31-51, Dkt. 50, Exhibits 3-9, Dkt. 51 Exhibits 3-14, Dkt. 53).

In creating a private right of action for victims of state-sponsored terrorism, Congress also provided that such foreign states are liable for money damages including "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. 1605A(c). "To obtain damages against a non-immune foreign state under the FSIA, a plaintiff must provide that the consequences of the foreign state's conduct were reasonably certain (*i.e.* more likely than not) to occur, and must prove the amount of damages by a reasonable estimate consistent with this [Circuit]'s application of the American rule on damages." *Roth*, 78 F. Supp. 3d at 402 (quoting *Salazar v. Islamic Rep. of Iran*, 370 F. Supp. 2d 105, 115-16 (D.D.C. 2005)) (internal quotation marks omitted and alteration in original); *see also Kim v. Democratic People's Rep. of Korea*, 87 F. Supp. 3d 286, 289 (D.D.C. 2015) (quoting *Hill*, 328 F.3d 680, 681 (D.C. Cir. 2003)).

**<u>Pain and Suffering</u>**

Pain and suffering awards to surviving victims of terrorism depend on various factors. *Wultz v. Islamic Rep. of Iran* , 864 F. Supp. 2d 24, 37-38 (D.D.C. 2012). *Peterson* adopted a general procedure for the calculation of damages that begins with the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory damages. *Peterson v. Islamic Rep. of Iran*, 515 F. Supp. 2d 25 (D.D.C. 2007). Courts "depart

upward from this baseline to $7 - $12 million in more severe instances of physical and psychological pain, such as where victims suffered relatively more numerous and severe injuries, were rendered quadriplegic, partially lost vision and hearing, or were mistaken for dead," *Valore*, 700 F. Supp. 2d at 84, and will "depart downward to $2 - $3 million where victims suffered only minor shrapnel injuries or minor injury from small-arms fire," *Id*. *Wultz* explored some of those departures:

    This Court granted Terrance Valore, a soldier who survived the 1983 Beirut bombing, an upward departure from $5 million to $7.5 million. *Valore*, 700 F. Supp. 2d at 84. Terrance suffered burns covering 90% of his body, shrapnel wounds, and a split leg. *Id*. This Court awarded $7 million to Nathaniel Walter Jenkins, a solider who initially survived the Beirut attack but died seven days later. *Peterson II*, 515 F. Supp. 2d at 53. Nathaniel suffered a traumatic skull injury requiring brain surgery and also had a significant portion of his body covered in excruciatingly painful burns. *Id*. (01-cv-2094, Special Master Report, November 16, 2005, ECF No 78). Jeffrey Nashton survived the Beirut bombing but suffered "a skull fracture, shattered cheekbone, eyebrow and right eye orbit, crushed arms, a broken left leg a bruised right left, two collapsed lungs, burns on his arms and back, and internal bleeding." *Id*. at 56. Jeffrey, awarded $9 million, lived with the results of the Beirut attack, including severe short-term memory loss, numbness in his extremities, a lazy eye, leg pain and nightmares, for at least 23 years after the bombing. *Id*. (01-cv-2094, Special Master Report, Aug. 16, 2006, ECF No 187). *Wultz*, 864 F. Supp. 2d at 38. *Wultz* itself awarded $5 million to one victim who "suffered shrapnel wounds in his legs, forehead, face, and scalp, a fractured left tibia, and ruptured eardrums." *Id*. at 39. *Wultz* noted that at the time of its decision, the victim "continues to have an abnormal gait, constant ringing in his ears, little sense of smell and taste, and lower back pain." *Id*.

Victims of terrorism that suffer severe emotional injury, but no physical injury are typically awarded by this Court $1.5 million per victim. *See Harrison v. Rep. of Sudan*, 882 F. Supp. 2d 23, 49 (D.D.C. 2012) (*citing Valore*, 700 F. Supp. 2d at 85).

## B.      Solatium Damages

Title 28 U.S.C. § 1605A(c) allows for an award of solatium damages to close relatives of victims of terrorism. Solatium damages are intended to compensate the immediate relatives of an injured party at least partially for their mental anguish and the loss of the "comfort and society" previously provided by the injured party. *Fraenkel v. Islamic Rep. of Iran*, 892 F. Supp. 3d 348, 356-57 (D.C. Cir. 2018); *Flatow*, 999 F. Supp. 1, 31. Unlike the plaintiffs' medical damages, "solatium damages, by their very nature, are unquantifiable." *Braun*, 228 F. Supp. 3d at 85 (internal quotation marks omitted) and as such, assessing a monetary figure to the multiple layers of harm that a terror victim or the family of a terror victim suffers is extremely difficult. In determining the "reasonable estimate," courts may look to expert testimony and prior awards in the dozens of civil terrorism decisions rendered pursuant to the FSIA. *See Reed v. Islamic Rep. of Iran,* 845 F. Supp. 2d 204, 214 (D.D.C. 2012); *Acosta v. Islamic Rep. of Iran,* 574 F. Supp. 2d 15, 29 (D.D.C. 2008). *Haim v. Islamic Rep. of Iran,* 425 F. Supp. 2d 56, 71 (D.D.C. 2006) (Lamberth, *J.*). Indeed, because "[t]here is no objective way to assign any particular dollar value" to these injuries, the courts' primary obligation is "to ensure that such awards for intangibles be fair, reasonable, predictable, and proportionate." *Turley v. ISG Lackawanna*, 774 F. 3d 140, 162 (2d Cir. 2014); *cf. also Brayton v. U.S. Trade Rep.*, 641 F. Supp. 3d 521, 526 (D.C. Cir. 2011) (holding that treating like cases alike is "a necessary condition" for avoiding "arbitrary" use of judicial discretion). Accordingly, the monetary judgments entered in this district in FSIA terrorism cases demonstrate an exceptionally broad consensus linking the amount of a judgment to the nature of the familial

relationship between the claimant and the deceased. *See Moradi v. Iran*, 77 F. Supp. 3d 57, 72 (D.D.C. 2015); *see also Cohen*, 268 F. Supp. 3d 19, 24 (D.D.C. 2017) ("In the interests of fairness…courts try to maintain consistency of awards…among plaintiffs in comparable situations."); *Hekmati v. Iran*, 278 F. Supp. 3d 145, 163 (D.D.C. 2017) (consistency is a "primary consideration"); *Stansell v. Republic of Cuba*, 217 F. Supp. 3d 320, 345 (D.D.C. 2016).

The FSIA grants to any national of the United States a claim for loss of solatium due to an act of terrorism involving personal injury against any foreign state "that is or was a state sponsor of terrorism" at the time of the underlying act of terrorism, provided that the act of terrorism involved "torture, extrajudicial killing,…or the provision of material support or resources for such an act." § 1605A(a)(2)(A)(i) and (c). The elements that must be demonstrated are: the claim must be 1) by a U.S. national, 2) for money damages,[7] 3) the claim must be against a foreign state, 4) that was designated as the state sponsor of terrorism at the time of the attack or within six months thereafter,[8] 5) the underlying injury suffered must be "personal injury or death,"[9] and that personal injury or death must be 6) caused by 7) "an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources" by "an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency."[10] *See Anderson v. Islamic Rep. of Iran*, 753 F. Supp. 2d 68, 79, 84 (D.D.C. 2010).

The substantive elements are all easily satisfied here as to all Plaintiffs:

---

[7] 28 U.S.C. § 1605A(a)(1).

[8] 28 U.S.C. § 1605A(a)(2)(A)(i)(I).

[9] 28 U.S.C. § 1605A(c).

[10] 28 U.S.C. § 1605A(a)(1).

The FISA defines "national of the United States" to include a U.S. citizen. § 1605A(5)(h); 8 U.S.C. § 1101(a)(22). The Plaintiffs seeking solatium damages (Devora Sue Borochov, Shari Mayer, Josef S. Borochov, Shira Nechama Borochov, Avraham Borochov, Yehudit Golan, and Matan Gyaer Golan) are all U.S. citizens, as is demonstrated by their passports or certificates of citizenship, annexed hereto, and are thus all U.S. nationals. (Dkt. 30, Exhibits A-J).

This is a claim for money damages, as is evident on the face of the Complaint and as explained further *infra*.

This is a claim against Iran and Syria, which are foreign states.

Iran and Syria are and were, at all pertinent times, designated state sponsors of terrorism as that term is defined by § 1605A(h)(6). *See* U.S. Dep't of State, State Sponsors of Terrorism, https://www.state.gov/j/ct/list/c14151.htm; *see Campuzano*, 281 F. Supp. 2d at 270.

The terror victims all suffered serious and permanent bodily injury and/or emotional damages.

Their injuries were plainly caused by Hamas' terrorism and Iran's and Syria's material support thereof. *Id.* at 261-62, 269-70 ("[T]he court determines that the bombing was an act of extrajudicial killing that caused the plaintiffs' injuries.").

The term "extrajudicial killing," both when *Campuzano* was decided in 2003 and now, means "a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples." 28 U.S.C. § 1350 note; 28 U.S.C. § 1605A(h)(7); 28 U.S.C. § 1605(e)(1) (2002). The two attacks here at issue constitute "extrajudicial killing." *Id.* at 270.[11] Further, the

---

[11] Indeed, a terror attack constitutes an "extrajudicial killing" even if no one died in the attack. That is because the term "extrajudicial killing," as it is defined by 28 U.S.C. § 1605A(h)(7);

terror attacks were enabled and were conducted only but-for Iran's and Syria's "provision of material support or resources" *id.* at 262, thus subjecting Iran to liability for that additional reason. *See also Fraenkel*, 248 F. Supp. 3d 21, 37-38 (D.C. Cir. 2017); *Braun*, 228 F. Supp. 3d at 64. As *Campuzano* found, Iran's support of the terrorism was orchestrated by senior Iranian officials, including Ayatollah Ali Hoseini Khamenei, acting within the scope of their office or employment and pursuant to "official Iranian policy." *Id.* at 262, 270.

Many of these elements are plainly established by the documentary evidence submitted herewith. This Court may rely on the evidence produced in *Force* without requiring the Plaintiffs here to re-submit and re-establish that same evidence, to reach its own findings as to those elements that *Campuzano* found to be demonstrated with clear and convincing evidence. *Fain v. Islamic Rep. of Iran*, 856 F. Supp. 2d 109, 115-16 (D.D.C. 2012).

Because Iran and Syria have defaulted and Plaintiffs' claims remain undisputed, Plaintiffs' respectfully submit that upon considering the evidence submitted in *Force*, the Plaintiffs have plainly submitted satisfactory evidence as to each of their claims. Further, the Court should review and take judicial notice of the evidence admitted and relied upon in the *Force* case with respect to Iran's and Syria's material support provided to Hamas without Plaintiffs having to present such evidence again. *See Murphy v. Islamic Rep. of Iran*, 740 F. Supp. 2d 51, 59 (D.D.C. 2010).

Each family, as detailed in the accompanying proposed findings of fact and conclusions of law, has submitted compelling evidence of an extremely close relationship with the victim, as well as the acute suffering due to the circumstances surrounding these attacks that continue to cause them pain, grief, suffering, and psychological and emotional trauma. Each surviving victim has

---

28 U.S.C. § 1350 note, encompasses even "attempted extrajudicial killing[s]." *Gill v. Islamic Rep. of Iran*, 249 F. Supp. 3d 88, 98-99 (D.D.C. 2017).

also submitted equally compelling evidence of the pain, suffering and trauma suffered by them due to the circumstances of the attack, and the effect it had and continues to have on their lives and their families.

## C.      Punitive Damages

The Plaintiffs also seek punitive damages, which are awarded not to compensate the victims, but to "punish outrageous behavior and deter such outrageous conduct in the future." *Kim*, 87 F. Supp. 3d at 290 (quoting *Bodoff v. Islamic Rep. of Iran*, 907 F. Supp. 2d 93, 105 (D.D.C. 2012) (internal quotation marks omitted)); *see also* Restatement (Second) of Torts § 908(1) (1977). Punitive damages are warranted where "defendants supported, protected, harbored, aided, abetted, enabled, sponsored, conspired with, and subsidized a known terrorist organization whose modus operandi included the targeting, brutalization, and murder of American citizens and others." *Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d, 48, 85 (D.D.C. 2011). The Defendants' conduct in supporting Hamas justifies the imposition of punitive damages here.

In determining the appropriate amount of punitive damages, courts consider "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Wultz*, 864 F. Supp. 2d at 41 (quoting *Acosta*, 574 F. Supp. 2d at 30); *Bodoff*, 907 F. Supp. 2d at 105; *see also* Restatement (Second) Torts § 908(1)-(2) (1977). Several approaches have been articulated for calculation of the appropriate amount of punitive damages in state-sponsored terrorism cases. One approach is to multiple the foreign state's "annual expenditures on terrorism" by a factor between three and five. *See Baker*, 775 F. Supp. 2d at 85 (citing *Valore*, 700 F. Supp. 2d at 88-90; *Estate of Heiser v. Islamic Rep. of Iran*, 659 F. Supp. 2d 30, 31 (D.D.C. 2009); *Acosta*, 574 F. Supp. 2d at 31; *Beer v. Islamic Rep. of Iran*, 798 F. Supp. 2d 14, 26 (D.D.C.

2011). This approach, which may result in awards in the billions of dollars, has been used in the case of exceptionally deadly attacks, such as the 1983 bombing of the Marine barracks in Beirut, which killed 241 American military servicemen. *See Baker*, 775 F. Supp. 2d at 85. Other courts award punitive damages based on a ratio between punitive and compensatory damages, *see, e.g., Spencer v. Islamic Rep. of Iran*, 71 F. Supp. 3d 23, 31 (D.D.C. 2014). Another approach awards a fixed amount of $150 million per affected family. *See Wyatt*, 908 F. Supp. 2d at 233 (awarding $300 million in total to two victims and their families); *Baker*, 775 F. Supp. 2d at 86 (awarding $150 million each to families of three deceased victims); *Gates*, 580 F. Supp. 2d at 75 (awarding $150 million each to the estates of two victims).

Plaintiffs submit that the Defendants' conduct here supporting terrorism, as outrageous as it is, more closely resembles the conduct in cases awarding $150 million per family rather than the cases in which a multiple of a foreign state's entire sponsorship of terrorism is used.

### D.      Findings of Fact and Conclusions of Law

Plaintiffs are submitting a separate document entitled Proposed Findings of Fact and Conclusions of Law in which the Plaintiffs propose amounts of damages awards for each Plaintiff and on each claim. Plaintiffs respectfully ask that judgment be entered in Plaintiffs' favor for the amounts requested in that Proposed Findings of Fact and Conclusions of Law.

### III.

### THE COURT MAY REFER THE ASSESSMENT
### OF DAMAGES TO A SPECIAL MASTER

FSIA Section § 1605A authorizes courts to "appoint special masters to hear damage claims brought under this section." 28 U.S.C. § 1605A. Therefore, it has become commonplace for courts to address liability first and, upon a finding of liability, refer the case to a special master for findings as to damages. *See, e.g., Kaplan v. Central Bank of the Islamic Rep. of Iran*, 55 F. Supp.

189, 3d 200 (D.D.C. 2014); *Wamai v. Rep. of Sudan*, 60 F. Supp. 3d 84, 87 (D.D.C. 2014) (court

aided by special masters for assessment of damages); *Worley*, 75 F. Supp. 3d 311, 338-39 (D.D.C.

2014); *Spencer v. Islamic Rep. of Iran*, 922 F. Supp. 2d 108, 109 (D.D.C. 2013). Given the large

number of Plaintiffs and the limitations on the Court's time, in the interests of judicial economy,

a reference to a special master may be appropriate in this case.

An exemplar order from Judge Lamberth in another case, *Kaplan*, (D.D.C. 10-cv-483),

appointing a special master to determine damages and outlining the availability of, and funding

for, special masters to determining damages in cases arising under 28 U.S.C. § 1605A, is attached

as Ex. 1. If the Court decides to appoint a special master to determine damages, Plaintiffs would

have no objection to the appointment of Alan L. Balaran, Esq., the same special master Judge

Lamberth appointed in *Kaplan*. Attached as Ex. 2 is proposed Administrative Plan for

Appointment of Special Masters that could be used in this case.

## IV.

### THE COURT SHOULD AWARD PRE-JUDGMENT INTEREST

Prejudgment interest has been sought by similarly situated Plaintiffs, and awarded by the

Court, in numerous prior cases arising from acts of terrorism. *See Reed,* 845 F. Supp. 2d at 214-15

(the Court determined that pre-judgment interest was appropriate on the whole award, including

pain and suffering and solatium, but not punitive damages), *see also Opati,* 60 F. Supp. 3d 68, 82

(D.D.C. 2014); *Estate of Doe v. Islamic Rep. of Iran,* 943 F. Supp. 2d 180, 185 (D.D.C. 2013).

The *Doe* court further noted that the proper rate is the prime rate:

> In *Forman*, the leading case to assess prejudgment interest, the D.C. Circuit
> explained that the prime rate—the rate banks charge for short-term unsecured loans
> to creditworthy customers—is the most appropriate measure of prejudgment
> interest, one "more appropriate" than more conservative measures such as the
> Treasury Bill rate, which represents the return on a risk-free loan. *See* 84 F.3d at

450 (emphasis omitted). In reaching this conclusion, the D.C. Circuit did not expressly consider the best measure of the prime rate, although it approved the "district court's award of prejudgment interest at the prime rate for each year between the accident and the entry of judgment."

*Doe,* 943 F. Supp. 2d at 184 *quoting Forman v Korean Air Lines Co.,* 84 F3d 446, 450 (D.C. Cir. 1996).

In this case, the Court should award pre-judgment interest at the prime rate for each year since the plaintiffs' injuries. Plaintiffs would be pleased to submit calculations of the interest amounts if that would assist the Court.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for a judgment by default and enter judgment in the Plaintiffs' favor in the amounts set forth in the proposed Findings of Fact and Conclusions of Law which Plaintiffs will be submitting in this case, plus pre-judgment and post-judgment interest.

Dated:   Brooklyn, New York
      April 9, 2021

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for the Plaintiffs*

by:    _____
       Robert J. Tolchin

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the date indicated below a true copy of the foregoing was served via ECF on all counsel of record herein:

Dated:    Brooklyn, New York
          April 9, 2021

                                   Robert J. Tolchin