**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

-------------------------------------------------------------------- X

ELI M. BOROCHOV, *et al.,*

                    Plaintiffs,                    Case No: 19-cv-02855 (TNM)

              -against-

ISLAMIC REPUBLIC OF IRAN, *et al.,*

                    Defendants.

-------------------------------------------------------------------- X

### PLAINTIFFS' RESPONSE TO THE ORDER OF JANUARY 18, 2022

Plaintiffs respectfully submit this response to this Court's January 18, 2022 order (Dkt. 56). Specifically, this response will address Israeli tort law and recoverable damages under Israeli law for the non-US citizen, Israeli citizen plaintiffs, a group which includes Plaintiffs Rotem Golan, Raphael Golan, Nadav Golan, Shai Fishfeder, Efrat Fishfeder, Omer Fishfeder, and Shiri Fisherfeder.

### Additional Authority

In Plaintiffs' previous submissions, Plaintiffs indicated they are relying on expert declarations submitted in several earlier cases. In addition to those declarations, Plaintiffs now bring to the Court's attention and ask the Court to rely in further support of Plaintiffs' motion for a default judgment on the declaration of Professor Israel Gilead submitted in *Henkin v. Islamic Rep. of Iran,* (D.D.C 19-cv-01184) as Dkt. 56-2 in that case.

**<u>Assault and Battery</u>**

Under Israeli law, the civil torts of assault and battery are governed by Article 23 of the Civil Wrongs Ordinance ("CWO"). The elements of a battery are as follows:

    a.      The defendant knowingly;

    b.      Used force- directly or indirectly;

    c.      Against the body of another person;

    d.      Without the consent of that person.

*See* Dr. Boaz Shnoor Decl. at pp. 8-9 in *Force v. Islamic Rep. of Iran, et al.*, Dkt. 34, Civ No. 16-14688 (D.D.C. 2020). Here, the terrorist rammed a motor vehicle into people waiting at a bus stop for the purpose of killing them. (Dkt. 54 ¶¶ 119-20). Yoav and Rotem Golan were waiting at that bus stop and sustained physical and emotional injuries in the terrorist attack. (Dkts. 38, 46; Dkt. 51, Ex. 9; Dkt. 53, Ex. D) Yoav and Rotem did not consent to the violent attack on them. (Dkts. 38, 46). Plaintiffs have met the burden of establishing under Israeli law that a battery was committed in the terrorist attack against Rotem and Yoav.

The elements of assault under Israeli law are as follows:

    a.      A defendant knowingly;

    b.      Attempted or threatened by any act or gesture to use force against another person;

    c.      Making the other believe upon reasonable grounds that he has the present intention and ability to affect his purpose.

*See* Dr. Shnoor Decl. at p. 8 in *Force*, Dkt. 34, Civ No. 16-14688. Here, a terrorist intentionally rammed a vehicle into individuals waiting at a bus stop. (Dkts. 38, 46, 54). Yoav and Rotem reasonably believed the terrorist was going to continue his attack. (Dkts 38, 46). There is evidence the terrorist was trying to retrieve an axe from his motor vehicle to complete his mission of killing

the people at the bus stop when was he was shot by a civilian. (Dkt. 54 at ¶¶ 119-20). The terrorist attack and the threat of it continuing after the initial impact of the vehicle onto the Golans involved the threat to continue to use force and made the victims believe that the terrorist had the intention and ability to continue his attack on them. (Dkts. 38, 46, 54). Therefore, pursuant to Article 23 of the CWO of Israeli law, the Court finds Plaintiffs have established an assault took place.

## Negligence

Just as in our case, plaintiffs in *Henkin v. Islamic Rep. of Iran*, 2021 WL 291403 *3 (D.D.C. July 12, 2021), pled causes of action for intentional infliction of emotional distress, negligent infliction of emotional distress, aiding and abetting, civil conspiracy, and vicarious liability. Applying Israeli law because the children and their mother were Israeli citizens, the *Henkin* Court found Iran liable to the Israeli plaintiffs under a negligence theory of liability. This is because, as discussed below in detail, Israel's negligence cause of action encompasses intentional and negligent infliction of emotional distress.

Here, the non-U.S. Plaintiffs have their own negligence claims against the Defendants under Article 12 of the CWO based on the terrorist's intentional and negligent tortious conduct of ramming his motor vehicle into people, including Rotem, waiting at a bus stop for the purpose of killing or seriously injuring them. (Dkt. 6 ¶¶ 70, 72, 87-88, 101; Dkt. 54 ¶¶ 119-22). As Dr. Shnoor indicated in his declaration at pp. 4-7 in *Force*, Dkt. 34, Civ No. 16-14688, an Israeli Court would find an intentional terrorist attack to fall within a negligence theory of liability.

As discussed in *Henkin*, 2021 WL 291403 *8, there are two types of negligence under Articles 35-36 of the CWO. The first type of negligence is "a type of harm that is careless or negligent conduct, which consists of failure to act as a reasonable, prudent person would under the circumstances." Decl. of Prof. Gilead at pp.. 6-8 in *Henkin*, Dkt. 56-2, 2021 WL 291403 *8. The

second type of negligence includes "harms caused knowingly, intentionally, and maliciously." *See*
Prof. Gilead's Decl. at pp. 6-8 in *Henkin*, Dkt. 56-2, 2021 WL 291403 *7. Israeli law thus defines
as "negligence" under what the United States' common law would consider an intentional tort. *See*
Prof. Gilead's Decl. at pp. 6-8 in *Henkin*, Dkt. 56-2, 2021 WL 291403 *7. As Dr. Shnoor discussed
in his declaration in *Force*, Dkt. 34 ¶¶ 50-60, Civ No. 16-cv-1468, the elements required under
either type of negligence under Israeli law include (1) duty, (2) breach, (3) causes (4) harm. *See
also Weinstock v. Islamic Rep. of Iran*, 2019 WL 1507255 (S.D. Fla. April 4, 2019); *Estate of
Botvin v. Islamic Rep. of Iran*, 873 F. Supp. 2d 232, 241 (D.D.C. 2012) (discussing Israel's
negligence elements by relying on Dr. Shnoor and Israeli case law such as CA 243/83 *City of
Jerusalem v. Gordon, P.D.* 39(1) 113 128 (1985)).

Under Israeli law, the first element of negligence "recognizes that a duty of care exists not
to harm others." *Estate of Botvin*, 873 F. Supp. 2d at 241 (relying on Dr. Shnoor and CA 243/83
*City of Jerusalem v. Gordon, P.D.* 39(1) 113 128 (1985)); *Wultz v. Islamic Rep. of Iran*, 755
F. Supp. 2d 1, 58-59 (D.D.C. 2010). Duty under Israeli law is divided into "duty in fact and
notional duty." *Wultz*, 755 F. Supp. 2d at 58. "[E]very person owes a duty to all persons whom…a
reasonable person ought in the circumstances to have contemplated as likely in the usual course of
things to be affected by an act, or failure to do an act." CWO § 36, 2 LSI (New Version) 15 (1972).
A court asks if a reasonable person could have foreseen the likelihood of damage when
determining duty-in-fact. *See Wultz*, 755 F. Supp. 2d at 58. Furthermore, if a duty-in-fact exists
but the risk of harm as it occurred was already "taken into account by normal society when engaged
in a particular action," a defendant will not be liable under the tort of negligence. *Id.* at 58-59.
Normative duty considers "whether a reasonable person ought, as a matter of policy, to have
foreseen the occurrence of the particular damage." *CA 145/80 Vaknin v. Beit Shemesh Local*

*Council 37(1) PD 113, 125-26 (1982) (Isr.); see also Wultz*, 755 F. Supp. 2d at 59. In the case at bar, a reasonable person could foresee that ramming a vehicle into people waiting at a bus stop would cause damage to those individuals. The Court should find that the non-U.S. Plaintiffs have demonstrated the terrorist was under a duty to the victims as it was foreseeable that his intentional act of ramming a motor vehicle into people at a bus stop would cause injuries to the victims. The Court should also find that the Defendants were under a duty to the victims because, as discussed above, the injuries of the victims were foreseeable consequences of providing material support for Hamas and supporting Hamas's efforts to disrupt the Israeli-Palestinian peace process. For the same reasons the Court also finds sufficient evidence to tie Iran and Syria to Hamas terrorist actions, and that a duty existed between Iran and Syria and the Plaintiffs and their families because their injuries were foreseeable consequences of the aid and support.

A breach of the duty of care occurs when a party with a duty fails to take "reasonable precautionary measures." *Vaknin*, 37(1) PD at 131. Reasonable precautions are determined by balancing the interests of the plaintiff with that of the tortfeasor and considering the public interest in the continuation or cessation of the alleged tortious actions. *See Wultz*, 755 F. Supp. 2d at 62. In the present case, a reasonable person could foresee that a person intentionally ramming a car into people at a bus stop would cause great harm to those at or around the bus stop. *See Estate of Botvin*, 873 F. Supp. 2d at 241 (citing CA 796/80 *Ohana v. Abraham P.D.* 37(4) 337 (1983) (concluding that intentional killings breached the duty of care)). The Court should find the terrorist breached his duty of care to the Plaintiffs by intentionally ramming his motor vehicle into people at a bus stop for the purpose of killing or causing serious bodily injury to them.

Israeli law uses the "but for" test for causation. *See* Dr. Shnoor Decl. in *Force*, Dkt. 34 ¶ 21, Civ No. 16-cv-1468, relying on CA 145/80 *Va'aknin v. The City of Beit Shemesh,* P.D. 37(1)

113, 144). "If a reasonable person could have foreseen that a harm of the kind that happened might happen, the legal causation requirement is met." *See* Dr. Shnoor's Decl. in *Force*, Dkt. 34 ¶ 22, Civ No. 16-cv-1468. Here, just like in *Force*, it is clear that the Hamas terrorist foresaw that ramming his motor vehicle into a crowd of people at a bus stop would harm those individuals. The Hamas terrorist sped up his motor vehicle before ramming into the people at the bus stop and investigators did not find any skid marks at the scene from the terrorist's vehicle. (Dkt. 54 ¶ 122). Defendants provided material support to Hamas in the years leading up to the December 14, 2015, terrorist attack. Iran has in the past publicly urged Hamas to carry out terrorist acts as a way to disrupt the Middle East peace process and that Iran has provided financial and military support to Hamas. *See* Decl. of Prof. Patrick Clawson in *Force*, Dkt. 32 ¶¶ 33, 38, Civ. No. 1468 and Decl. of Levitt in *Force*, Dkt. 31 ¶¶ 41, 42-53, Civ. No. 1468. Syria provided a safe haven for Hamas that allowed Hamas to train, recruit, fundraise, plan attacks and communicate throughout the world with respect to terrorism. *See* Decl. of Benedetta Berti in *Force*, Dkt. 29 ¶¶ 24-27, 34, 41, 45, 47, 52-54, 59-60, Civ. No. 1468 and Decl. of Marius Deeb in *Force*, Dkt. 30 ¶¶ 15, 18-24, Civ. No. 1468. Hamas even moved its headquarters and senior leaders to Damascus permanently in 2003 and Syrian government officials brokered meetings between Iranian government officials and Hamas members in Damascus. Syria allowed Iran to smuggle weapons through Syria to Iran. *Id*. The Israeli Plaintiffs have demonstrated that but for the support provided by Iran and Syria, Hamas would not have been able to develop into the organized and deadly organization that it is today. Israeli law would hold the Hamas terrorists liable for the harm to victims caused by his terrorist attack. *See* Dr. Shnoor's Decl. in *Force*, Dkt. 34 ¶¶ 23-24, Civ No. 16-cv-1468.

Harm under Israeli law includes "loss of life, or loss of, or detriment to, any property, comfort, bodily welfare, reputation or other similar loss of detriment." *See* CWO (New Version),

5728-1968, 2 LSI 5, § 2 (1972) (Isr.). Here, Rotem sustained physical injuries that were detrimental to her bodily welfare. (Dkt. 46; Dkt 51, Ex. 9; Dkt. 53, Ex. D). In the hospital Rotem received treatment for her injuries, including eight sutures in her knee and an injury to her back. (Dkt. 46; Dkt. 51, Ex. 9). Rotem was unable to bend that knee for some time. (Dkt. 46; Dkt. 51, Ex. 9). Rotem's injured knee was bandaged for two weeks after the attack. (Dkt. 46; Dkt. 51, Ex. 9). It took about ten months for Rotem to recover physically from her injuries and to this day she still at times experiences itching, burning and pain at the scar sites of her injuries. (Dkt. 46; Dkt. 51, Ex. 9). Rotem and Yoav's baby was still nursing and due to her injuries, Rotem could not even pick up her baby. (Dkt. 46; Dkt. 51, Ex. 9). Instead, family members had to bring the baby to Rotem for nursing. (Dkt. 46; Dkt. 51, Ex. 9).

Dr. Friedman evaluated Rotem, but due to COVID-19 restrictions in effect at the time he was unable to perform an in-person evaluation. (Dkt. 53, Ex. D). Dr. Friedman reviewed Rotem's medical records for her treatment from the terrorist attack. (Dkt. 53, Ex. D). Rotem's medical records indicate she sustained a back contusion, bilateral knee contusion and traumatic laceration of the right leg. (Dkt. 53, Ex. D). The hospital records from December 14, 2015, indicate "[T]errorism involving other means. MVA." (Dkt. 53, Ex. D). The right knee laceration was sutured and Rotem was discharged from the hospital the next day. (Dkt. 53, Ex. D). While in the hospital, Rotem complained of pain in her right pelvis and pain in both knees. (Dkt. 53, Ex. D). Rotem was prescribed physical therapy for a MCL tear Grade 1/2 and right knee lacerations. (Dkt. 53, Ex. D). Rotem recalls vomiting in the hospital on December 14, 2105, and that she "felt shockey." (Dkt. 53, Ex. D). Rotem was unable to drive for a month after the attack and she was unable to return to her studies for 2.5 months following the attack. (Dkt. 53, Ex. D). Rotem and Yoav had to move in with Rotem's family so they could have help with their baby and with their

recovery. (Dkt. 53, Ex. D). Rotem attended physical therapy for three months and she had to take antibiotics for a short period of time. (Dkt. 53, Ex. D). Rotem's right knee has a well-healed scar on it. (Dkt. 53, Ex. D).

According to Dr. Friedman, Rotem's symptoms were caused by the December 14, 2015, injuries. (Dkt. 53, Ex. D). Dr. Friedman's impression is that Rotem suffered bilateral knee contusions, lumbar contusion, pelvis contusion and traumatic laceration of the right leg. (Dkt. 53, Ex. D). Rotem was hit by a motor vehicle on December 14, 2015 and suffered bilateral leg pain which required analgesics and physical therapy. (Dkt. 53, Ex. D). In light of Rotem's declaration and Dr. Friedman's report, it is clear Rotem sustained physical damages from the terrorist attack. Therefore, Israeli law would hold the Hamas terrorist negligent and liable for he harm he caused to the victims of his terrorist attack.

Besides the above, under Israeli law, there is the tort of "[N]egligent Support of Terrorism" that is a judicially-created theory of liability set forth in CivA 2144/13 *Mantin v. Estate of PLO* (6/12/2017) that can be used against Iran and Syria. In *Mantin*, the Israeli Supreme Court "recognized that establishing an infrastructure for assisting and encouraging terrorist acts is in itself a negligent act." *Henkin*, 2021 WL 291403 *16-17. To establish such a claim a plaintiff must show that "(1) support for terrorism constitutes knowingly, intentionally, and maliciously doing something that causes an unreasonable risk of harm, (2) defendants had a duty of care not to support terrorism or create an unreasonable risk of harm from terrorism, and they breached this duty by supporting terrorism, and (3) defendants' support was both the but-for cause and proximate cause of the *Henkin* attack." 2021 WL 291403 *8. While in *Henkin*, 2021 WL 291403 *8, the plaintiffs did not establish the but-for and proximate cause element of this theory of liability, the plaintiffs relied upon *Mantin v. PLO*, which shifted the burden to defendants to show they were

not the cause because the plaintiffs had shown the defendants supported terrorism and had asserted but-for and proximate causation. Since the defendants defaulted in *Heinken*, defendants did not meet their burden and the Court found the defendants primarily liability for negligent support of terrorism. *See* Prof. Gilead's Decl. at pp. 17-18 in *Henkin*, Dkt. 56-2, 2021 WL 291403 *8. In the case at bar, Plaintiffs detailed in the Proposed Findings of Fact and Conclusions of Law the material support Defendants provided to Hamas in the years leading up to the December 14, 2015, terrorist attack that injured Yoav and Rotem. *See* Decl. of Prof. Patrick Clawson in *Force*, Dkt. 32 ¶¶ 33, 38, Civ. No. 1468 and Decl. of Levitt in *Force*, Dkt. 31 ¶¶ 41, 42-53, Civ. No. 1468. These experts have established that Iran has in the past publicly urged Hamas to carry out terrorist acts as a way to disrupt the Middle East peace process and that Iran has provided financial and military support to Hamas. *Id*. As for Syria, the experts have demonstrated that Syria provided a safe haven for Hamas that allowed Hamas to train, recruit, fundraise, plan attacks and communicate throughout the world with respect to terrorism. *See* Decl. of Benedetta Berti in *Force*, Dkt. 29 ¶¶ 24-27, 34, 41, 45, 47, 52-54, 59-60, Civ. No. 1468 and Decl. of Marius Deeb in *Force*, Dkt. 30 ¶¶ 15, 18-24, Civ. No. 1468. Hamas even moved its headquarters and senior leaders to Damascus permanently in 2003 and Syrian government officials brokered meetings between Iranian government officials and Hamas members in Damascus. Syria allowed Iran to smuggle weapons through Syria to Iran. *Id*. Here, Defendants defaulted so Defendants have failed to show they were not the cause because Plaintiffs have demonstrated the Defendants materially supported terrorism.

## **Aiding and Abetting**

"Israeli law imposes liability on actors who aid and abet another's tortious actions." *Estate of Botvin*, 873 F. Supp. 2d at 241-242. Article 12 of the CWO states that "any person who joins or aids in, authorizes, counsels, commands, procures, or ratifies any act done or to be done,…or any

omission made or to be made,…by any other person shall be liable for such act or commission." CWO (New Version), 5728-1968, 2 LSI 5, § 12 (1972) (Isr.). "In order for a person to be liable…a person should either aid the principal actor in performing a civil wrong…or encourage him to perform it, foreseeing that the principal actor is about to commit the wrong." *Estate of Botvin*, 873 F. Supp. 2d at 241-42. "A plaintiff may establish aiding and abetting liability by showing that the defendant was aware of the other's violent intentions and that they nonetheless provided support in spite of them." *Estate of Botvin*, 873 F. Supp. 2d at 241-42 (citing *Wultz*, 755 F. Supp. 2d at 80).

According to Prof. Gilead, aiding and abetting is viable once a plaintiff establishes a *prima facie* case of either assault or negligence against the terrorist attackers because aiding and abetting concerns secondary liability, which is a legislative theory of liability under Article 12 of the CWO. *See Heinken*, 2021 WL 291403 *9. Additionally, the defendants must have "actual knowledge" of the attack, but actual knowledge just means that the defendants materially contributed to the terrorist organization's ability to commit terrorist attacks and could have reasonably foreseen that defendants materially contributed to the terrorist organization and that this type of attack was a common behavior of the terrorist organization. *See* Prof. Gilead Decl. at pp. 10-16 in *Henkin*, Dkt. 56-2, 2021 WL 291403 *8. Further, plaintiffs must show that defendants materially and significantly contributed to the attack, *See* Prof. Gilead Decl. at pp. 14-16 in *Henkin*, Dkt. 56-2, 2021 WL 291403 *8. Under this element, Defendants need only have played even a minor role in the attack, even if the role was not the but-for cause of the attack. *Id*.

This Court should take judicial notice of the factual conclusions from *Campuzano v. Islamic Rep. of Iran*, 281 F. Supp. 2d 258, 262 (D.D.C. 2003), which are as follows:

1.      Hamas has a close relationship with Iran;

2.      Iran provides ongoing terrorist training and economic assistance to Hamas;

3.      Iran funnels much of its support to Hamas through MOIS;

4.      IRG is the military wing of MOIS. Under the direction of MOIS, IRG provides professional military and terrorist training to Hamas operatives responsible for executing terrorist acts throughout the Middle East;

5.      Iranian governmental support for terrorism is an official state policy and the approval of high-ranking Iranian officials was necessary for Iran and MOIS to support Hamas with training and economic assistance; and

6.      The bombing would not have occurred without Iranian sponsorship.

There are various cases (e.g., *Force,* Civ. No. 16-cv-1468, *Henkin*, 2021 WL 291403, *Roth v. Islamic Rep. of Iran*, 78 F. Supp. 3d 379 (D.D.C. 2015), *Bodoff v. Islamic Rep. of Iran,* 907 F. Supp. 2d 93 (D.D.C. 2012), where Courts have found Iran liable for a terrorist attack due to Iran's material support of Hamas, including providing Hamas with crucial funding, support and training necessary to allow Hamas to conduct terrorist attacks. *See Botvin IV*, 772 F. Supp. 2d at 230 (citing *Campuzano*, 281 F. Supp. 2d at 261-262). It is clear based on the facts of this case that Iran could reasonably foresee the consequences of Hamas' violent intentions as Hamas is an internationally recognized terrorist organization. *See Wultz*, 755 F. Supp. 2d at 80. As for Syria, courts have found that Syria materially supported Hamas by providing Hamas with a safe haven and funded and helped train Hamas members. *Henkin*, 2021 WL 291403, *Braun et al. v. Islamic Rep. of Iran et al.*, 228 F. Supp. 3d 64 (2017), *Leibovitch v. The Syrian Arab Rep.*, 25 F. Supp. 3d 1071 (N.D. Ill. 2014). Hamas even moved its headquarters and senior leaders to Damascus permanently in 2003 and Syrian government officials brokered meetings between Iranian government officials and Hamas members in Damascus. Syria allowed Iran to smuggle weapons through Syria to Iran. *See* Decl. of Benedetta Berti in *Force*, Dkt. 29 ¶¶ 24-27, 34, 41, 45, 47, 52-54, 59-60, Civ. No. 1468;

Decl. of Marius Deeb in *Force*, Dkt. 30 ¶¶ 15, 18-24, Civ. No. 1468. In *Fraenkel v. Islamic Rep. of Iran*, 248 F. Supp. 2d 21, 39-40 (D.D.C. 2017), this Court found Iran and Syria liable under Israeli law for aiding and abetting the negligence of Hamas in connection with a terrorist attack. Therefore, Plaintiffs have established that Defendants' acts are sufficient to have deemed them as having aided and abetted Hamas's tortious acts under Article 12 of the CWO.

**Intentional Infliction of Emotional Distress**

Intentional infliction of emotional harm under Israeli law is part of negligence because intentional torts are blended with the tort of negligence under Israeli law. See Prof. Gilead Decl. ¶ 25 in Henkin, Dkt. 56-2, 2021 WL 291403 *8. As Prof. Gilead noted in his Decl. ¶ 25 in Henkin, Dkt. 56-2, 2021 WL 291403 *8, negligence overlaps with intentional torts because "reasonable persons do not cause unreasonable harm knowingly, intentionally, and maliciously, and when they do, courts recognize a "duty" not to do so."

In *Leibovitch*, 25 F. Supp. 3d 1071, the Court discussed the elements for intentional infliction of emotional distress under Israeli law relying on the Israeli case LCA 444/87 *Munhar Alsoucha v. Dehan*, at 56 [1990] (Isr.). Under Israeli law, the four elements are as follows:

1.     Whether plaintiffs enjoy a close relationship to the primary victim;

2.     Whether plaintiffs directly perceived the tortious act;

3.     Plaintiff's degree of spatial and temporal proximity to the injurious event; and

4.     The severity of mental injury.

*Alsucha* at 62-73.

Here, it is submitted that the terrorist's act of ramming a vehicle into a group of people at a bus stop would have a foreseeable consequence of mental injury. In *Alsucha*, the Israeli Court stated that parents, spouses, children and other first-degree relatives automatically meet the

closeness requirement. *Id*. at 63 cited in *Leibovitch*, 25 F. Supp. 3d at 1802-1803. Plaintiffs' expert in *Leibovitch* indicated that siblings and grandparents also meet the closeness requirement for this cause of action under Israeli law. *Id*. 25 F. Supp. 3d at 1802-1803. Here, Rotem, is the wife of U.S. victim, Yoav, Raphael is Yoav's father, Shai Fishfeder is Rotem's father, Efrat Fishfeder is Rotem's mother and Nadav, Ohad, Omer and Shiri are the siblings of Yoav or Rotem. (Dkts. 39-42, 44-47, 49). Given the Israeli Plaintiffs' relationship to Yoav, it is submitted the Israeli Plaintiffs have met the first element of this claim.

      Concerning the second element of this cause of action, the Israeli Court in *Alsoucha* "held that witnessing a tortious act is not determinative, but the foreseeability of mental injury increases when one witnesses the act." *Leibovitch*, 25 F. Supp. 3d at 1083. Here, Rotem was present and experienced the terrorist act with Yoav that caused a mental injury diagnosed by Dr. Strous. (Dkt. 46; Dkt. 50, Ex. 1; Dkt. 51, Ex. 9). While the other Israeli Plaintiffs were not at the bus stop at the time of the terrorist act, there mental injuries, which are discussed in detail in their declarations (Dkts. 39-42, 44-47, 49) and in Dr. Strous' reports (Dkt. 50, Ex. 1; Dkt. 51, Exs. 3, 5, 6-12) were certainly foreseeable. A review of the Israeli Plaintiffs declarations and Dr. Strous' reports for these Plaintiffs reveals each of them suffered mental injuries as members of Yoav and Rotem's family as each of the Israeli Plaintiffs witnessed the aftermath of the terrorist act on Yoav and Rotem by helping them recover from their injuries. The Israeli Plaintiffs have demonstrated the negative impact the terrorist attack has had on their own lives and the toll the terrorist attack has taken on the family as a whole. (Dkts. 39-42, 44, 45-47, 49; Dkt. 50, Ex. 1; Dkt. 51, Exs. 3, 5, 6-12). The third element of this claim is implicated when the mental injury is 'the product of a continuous process of exposure to the consequences of the injurious event' as opposed to mental injury resulting from a one-time experience." *Leibovitch*, 25 F. Supp. 3d at 1083 citing LCA

444/87 *Munhar Alsoucha*, at 46. In *Alsoucha*, the Israeli Court decided that the "distinction should be based upon the extent of the damage, or 'clear proof of real and definite mental injury'" because the 'distinction between mental injury caused on the spot…and damage caused at a later stage' is arbitrary." *Leibovitch*, 25 F. Supp. 3d at 1803 citing *Alsoucha* at 69. Under Israeli law, the plaintiff must experience the "tragic event, or in an exceptional case, learns about the event in such circumstances that the emotional damage is expectable." *See Leibovitch*, 25 F. Supp. 3d at 1083-84; *Estate of Botvin*, 873 F. Supp. 2d at 245 (quoting *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 423 (E.D.N.Y. 2009)). In the present case, the Israeli Plaintiffs all have been diagnosed by Dr. Strous with a psychological injury, ranging from post-traumatic stress disorder, adjustment disorder, anxiety disorder to persistent depressive disorder and some received psychological counseling, including Rotem Golan and Yael Inbar. (Dkt. 50, Ex. 1; Dkt. 51, Exs. 3, 5, 6-12). The Court should find that the decline of the mental health of the Israeli Plaintiffs is proof of injury that meets the third element of this claim.

The fourth element concerns the severity of the mental injury, and a plaintiff needs to establish a mental illness with physiological effects or severe mental injury. *See Leibovitch*, 25 F. Supp. 3d at 1083 relying on LCA 444/87 *Munhar Alsoucha*, at 69. Here, the Israeli Plaintiffs in their declarations and through Dr. Strous' expert reports (Dkts. 39-42, 44-47, 49; Dkt. 50, Ex. 1; Dkt. 51, Exs. 3, 5, 6, 7, 8, 9, 10, 11, 12) have established their mental injuries diagnosed by Dr. Strous with physiological effects (e.g., lack of sleep, sweating, muscle tension, body shivers, palpitations) due to the terrorist attack. According to Dr. Strous, these Plaintiffs will continue to endure their mental traumas for the foreseeable future. (Dkt. 51, Exs. 3, 5, 6, 7, 8, 9, 10, 11, 12). The Court should find Plaintiffs have established severe mental injury.

The Court should find Dr. Strous' methods reliable, that he is a qualified expert in his field, that his expert testimony is relevant to the issue in this case, and that his reports, along with Plaintiffs' declarations demonstrate severe emotional distress. Therefore, the Israeli Plaintiffs have established the intentional infliction of emotional distress claims under Israeli law. *See Henkin*, 2021 WL 291403 *12.

## **Vicarious Liability**

Under Israeli law vicarious liability is a theory of liability and not an independent cause of action. *Henkin*, 2021 WL 291403 *13. Vicarious liability has theories of liability, such as aiding and abetting, civil conspiracy, and inducement. *See Belkin v. Islamic Rep. of Iran et al.*, 667 F. Supp. 2d 8, 21 (D.D.C. 2009).

Under Israeli law, Defendants are not personally liable for the torts, but a defendant is liable for torts committed by its agents. Vicarious liability resembles respondeat superior in the law of agency in the United States. Article 14 of the CWO states "any person who employs an agent, not being his employee, to do any act or class of acts on his behalf shall be liable for anything done by such agent in the performance of, and for the manner in which such agent does such act or class of acts." CWO (New Version), 5728-1968, 2 LSI 5, § 14 (1972) (Isr.); *See* Prof. Gilead Decl. at page 19 in *Henkin*, Dkt. 56-2, 2021 WL 291403 *8; *Leibovitch*, 25 F. Supp. 3d at 1084. The person that committed the tort is the agent of the principal if that person functioned as a "surrogate" or "long arm" of the defendant. Gilead Decl. at page 19 in *Henkin*, Dkt. 56-2, 2021 WL 291403 *8.

In order to establish the agency relationship, the Court in *Henkin* examined the degree of integration of the defendants in Hamas terror policies and found it to be high. *Id.* at *8. Here, as detailed in Spitzen's expert declaration, the integration of Iran into Hamas' terror policies is high just like in *Henkin*. (Dkt. 54). Plaintiffs have established that Iran and Syria provided material

support to Hamas and both Defendants at the time of their material support to Hamas were designated by the United States as state sponsors of terrorism. Plaintiffs have therefore shown that Defendants were the principal, and their agent was Hamas. Accordingly, Defendants should be held vicariously liable for the torts of their agents, Hamas operatives, including the Hamas terrorist that rammed his motor vehicle into a crowd of people at a bus stop. Defendants are vicariously liable under CWO of Israeli law for the negligence (Articles 35-36 of the CWO), breach of statutory duty (Article 63 of the CWO) and battery, and assault (Article 23 of the CWO).

Because Plaintiffs established that Defendants aided and abetted Hamas, the Court need not turn to civil conspiracy as a theory of vicarious liability. *See Belkin*, 667 F. Supp. 2d 8 at 21 (declining to examine if a defendant might also be liable under other theories of liability after concluding defendant was liable under a civil conspiracy theory). However, should the Court consider civil conspiracy as a theory for vicarious liability on the part of the Defendants, the Court should use the law of this forum. In *Leibovitch*, 25 F. Supp. 3d 1071, the Court stated "[W]here parties have not provided an adequate statement of law, 'the forum will usually decide the case in accordance with its own local law except when to do so would not meet the needs of the case or would not be in the interests of justice." *Estate of Botvin ex rel. Ellis v. Islamic Rep. of Iran*, 772 F. Supp. 2d 218, 228 (D.D.C. 2011) (quoting Restatement (Second) of Conflict of Law § 136 cmt. H. (1971)). To establish vicarious liability through civil conspiracy, a plaintiff must show the following elements:

1.   An agreement between two or more persons or entities;

2.   To participate in an unlawful act or in otherwise lawful act in an unlawful manner;

3.   That an injury or death or other damages was caused by an unlawful overt act performed by one of the parties to the agreement and

4.      Pursuant to or in furtherance of the common scheme.

*Id*. at 21. The agreement can be inferred from conduct. *Id*. at 21; *Bodoff v. Islamic Rep. of Iran*, 424 F. Supp. 2d, 84 (D.D.C. 2006). In *Bodoff*, 424 F. Supp. 2d at 84, the Court held that "sponsorship of terrorist activities inherently involves a conspiracy to commit terrorist attacks." (citing *Flatow v. Islamic Rep. of Iran*, 999 F. Supp. 1, 27 (D.D.C. 1998); *See also Gill v. Islamic Rep. of Iran*, 249 F. Supp. 3d 88, 100-101 (D.C. 2017) (finding "Iran's support of Hamas through funding and training of terrorism activities that targeted United States and Israeli citizens" was sufficient for civil conspiracy). In the present case, the evidence establishes that the terrorist was an agent of Hamas. (Dkt. 54). The terrorist's car ramming into innocent people at a bus stop served the interest of the Defendants and Hamas. (Dkt. 54). The terrorist act was conducted to further the scheme between the Defendants and Hamas to interfere with Middle East peace talks. (Dkt. 54). Therefore, Plaintiffs have established the four elements of a civil conspiracy under the District of Columbia's law.

**Negligent Infliction of Emotional Distress**

Plaintiffs have established liability for negligently supporting a terror organization that inflicted severe emotional distress, liability for aiding and abetting Hamas' negligence and vicarious liability for Hamas' negligence. Therefore, Plaintiffs should be granted relief as to their negligent infliction of emotional distress claims under Israeli law. *See Henkin*, 2021 WL 291403 *11.

**Damages**

Under Israeli law, the Israeli Plaintiffs have the same range of damages available to them as U.S. plaintiffs proceeding under the FSIA: (1) pecuniary damages, (2) non-pecuniary damages,

(3) bereavement compensation, which is like solatium damages and does not require severe mental harm, and (4) punitive damages. *See* Prof. Gilead Decl. ¶¶ 60-64 in *Henkin*, Dkt. 56-2, 2021 WL 291403. Additionally, Israeli law assesses damages jointly and severally against defendants. *See* Prof. Gilead's Decl. ¶¶ 6-64 in *Henkin*, Dkt. 56-2, 2021 WL 291403.

**Israeli Law Permits Recovery for Physical Injuries**

As Plaintiffs have established claims for assault, battery, aiding and abetting, intentional and negligent infliction of emotional distress and negligence under Israeli law, Rotem is entitled to recover for the physical injuries she suffered due to the terrorist attack. In *Henkin*, 2021 WL 291403 *12, the widow, an Israeli citizen, and her children, also Israeli citizens, recovered under Israeli law for the negligently inflicted wrongful death of her husband who was the children's father. *Id*. The Court in *Henkin* further held that if Eitam had survived he could have asserted causes of action for assault and negligence under Israeli law. *Id*. at * 12, 15. Here, Rotem suffered physical injuries in the terrorist attack that required immediate medical attention in a hospital and required subsequent medical treatment over a course of time. (Dkt. 46; Dkt. 53, Ex. D). Accordingly, pursuant to Israeli law, Rotem is entitled to recover compensatory damages for the physical injuries she sustained in the terrorist attack.

**Israeli Law Permits Recovery for Emotional Harm**

Israeli law provides for a plaintiff to recover damages for the emotional harm inflicted upon him or her by the terrorist attack. This is known as the "*Alsucha* rule" under Israeli law. As Dr. Shnoor explains, Israeli law provides that an immediate family member of a principal tort victim is entitled to compensatory damages for psychological and emotional harm resulting from the tort to the primary victim. *See* Shnoor Decl. ¶ 59 in *Force*, Dkt. 34, Civ. No. 16-cv-0468; Prof. Gilead's

Decl. ¶62 in *Henkin*, Dkt. 56-2, 2021 WL 291403. The harm suffered by a secondary victim, such as the non-U.S. citizen Plaintiffs in this case, is compensable if (1) the family member witnessed the event or its consequences, (2) there is a time and space proximity between the two harms, and (3) the secondary victim suffers severe harm that disrupts daily function. *Id.* As described by Dr. Shnoor, Israeli law does not allow damages to secondary victims unless the harm is so severe that is disrupts daily function. Shnoor Decl. ¶ 59 in *Force*, Dkt. 56-2, Civ. No. 16-cv-0468; *Estate of Botvin*, 873 F. Supp. 2d at 245; *Goldberg*, 660 F. Supp. 2d at 423.

The Court in *Henkin*, 2021 WL 2914030 *9, relying on Prof. Gilead's declaration found that the wife and children all of which were Israeli citizens suffered severe emotional injury as a result of the terrorist attack. Rotem was not only an innocent person that sustained physical injuries in the terrorist attack, but also sustained emotional injuries due to the terrorist attack. (Dkt. 46). The other Israeli Plaintiffs were not at the bus stop during the terrorist attack but witnessed the consequences of the terrorist attack which are set forth in their declarations. (Dkts. 39-42, Dkts. 44-46, 48-49), which detail their emotional injuries due to the terrorist attack. Additionally, the Israeli Plaintiffs have established their mental injuries that were diagnosed by Dr. Strous (Dkt. 50, Ex. 1; Dkt. 51, Exs. 3, 5, 6-12) with physiological effects (e.g., lack of sleep, sweating, muscle tension, body shivers, palpitations) due to the terrorist act. The Israeli Plaintiffs' lives as they knew them will never be the same, with some of them filled with anxiety and fear of another terrorist attack hurting or killing a family member. (Dkts. 39-42, Dkts. 44-46, 48-49; Dkt. 50, Ex. 1; Dkt. 51, Exs. 3 5, 6-12). Some had to rearrange their lives and miss work to care for Yoav and Rotem after the terrorist attack while other Israeli Plaintiffs had difficulty sleeping in the aftermath of the terrorist attack. (Dkts. 39-42, Dkts. 44-46, 48-49; Dkt. 50, Ex. 1; Dkt. 51, Exs. 3 5, 6-12). According to Dr. Strous, the Israeli Plaintiffs will continue to endure their mental traumas for the

foreseeable future. (Dkt. 50, Ex. 1; Dkt. 51, Exs. 3, 5, 6-12). The Court finds Plaintiffs have established severe mental injury. Just as in *Henkin*, the Israeli citizens in the case have suffered severe emotional injuries as a result of the terrorist attack on Yoav and Rotem Golan. Accordingly, the Israeli Plaintiffs are entitled to damages for the emotional injuries they suffered because of the terrorist attack on Yoav and Rotem Golan.

**Amount of Awards to Israeli Plaintiffs**

Regarding the monetary amount of damages to award, in *Leibovitch*, 25 F. Supp. 3d at 1086, the plaintiffs and their Israeli law expert did not set forth what the amount of damages would be under Israeli law for the Israeli plaintiffs. The Court in *Leibovich* used the law of the forum in "assessing the proper damages award" because to conduct "further research would unduly burden both Plaintiffs and the Court." *Id*. The Court indicated that using the law of the forum would be "in the interests of justice" for a damages assessment. *See Botvin*, 772 F. Supp. 2d at 228; *Oveissi v. Islamic Rep. of Iran*, 768 F. Supp. 2d 16 (D.D.C. 2011) (applying French law to the tort claims and federal law to the damages assessment). The Court in *Leibovitch* used the federal damages assessment to award damages to the Israeli plaintiffs but then slightly decreased each of their awards since Israeli law awards for this cause of action are typically lower than awards in the United States. *Id*. at 1087-88. In *Fraenkel v. Islamic Rep. of Iran*, 892 F.3d 348, 358 (D.C. Cir. 2018), the Court noted that when there is a lack of information about the proper calculation of damages under a foreign law, the Court defaults to the application of federal law. *See Thuneibat v. Syrian Arab Rep.*, 167 F. Supp. 2d 22, 47 (D.D.C. 2016) (collecting cases where courts assessed liability under foreign or state law but applied federal standard to damage calculation). Recently in *Weinstock v. Islamic Rep. of Iran et al.*, 2019 WL 1507255 (S.D. Fla. April 4, 2019), the Court used Israeli law to impute negligence to the defendants but used the *Heiser* framework under

federal case law to assess damages for an Israeli father whose U.S.-citizen son died in a terrorist attack when it awarded the Israeli father $5 million in solatium damages. Here, just as in *Fraenkel*, *Thuneibat, and Weinstock*, the *Heiser* damages framework should be utilized for the Israeli Plaintiffs. Specifically, since the Israeli Plaintiffs have established that they would be entitled to recover solatium damages under Israeli law, the Court should calculate the damages under the *Heiser* damages framework as follows:

- $5,000,000 in damages to Rotem Golan for physical and emotional injuries;

- $2,500,000 in damages to Raphael Golan;

- $1,250,000 in damages to Yael Golan Inbar;

- $1,250,000 in damages to Nadav Golan;

- $2,500,000 in damages to Shai Fishfeder;

- $2,500,000 in damages to Efrat Fishfeder;

- $1,250,000 in damages to Ohad Fishfeder,

- $1,250,000 in damages to Omer Fishfeder; and

- $1,250,000 in damages to Shiri Fishfeder.

**Israeli Law Permits Recovery of Punitive Damages**

In *Henkin*, 2021 WL 2914036 *10, the Court relying on Prof. Gilead's declaration (Dkt. 56-2 at page 22) to determine that Israeli law provides for punitive damages. Professor Gilead cited Civil File 4332-02 (Jerusalem) *Shemesh v. PLO* (2.11.2020) in which an Israeli Court stated "in cases of terrorist attack, punitive damages should be triple the amount of compensatory damages. *Henkin*, 2021 WL 2914036 *10. Here, because a Hamas terrorist intentionally rammed his motor vehicle into a crowd of people at a bus stop, Plaintiffs respectfully submit that the attack was indeed an "immoral and outrageous act" warranting punitive damages to punish such vile violent

attacks against innocent people. As set forth in the Proposed Findings of Fact and Conclusions of Law, the Golan family members regardless of citizenship request $50,000,000 in punitive damages.

**Conclusion**

The Court in *Henkin*, 2021 WL 291403 *12, found Iran and Syria liable under Israeli law for aiding and abetting the torts of assault and negligence and vicariously liable for enlisting Hamas as agents. The Court in *Henkin*, 2021 WL 291403 *12, also found Iran and Syria liable using Israeli law for negligently supporting infliction of the torts of assault and negligence. Here, just like the Israeli plaintiffs in *Henkin*, the Israeli Plaintiffs, pursuant to Israeli law, have established their claims under Israeli law against Iran and Syria for aiding and abetting the torts of assault and negligence and Iran and Syria are vicariously liable for enlisting Hamas as agents. Iran and Syria are also liable here under Israeli law for negligently supporting infliction of the torts assault and negligence. The Israeli Plaintiffs have established that they suffered severe emotional distress and that they are entitled to non-pecuniary damages in an amount to be determined in a future proceeding. Further, Rotem Golan, as an Israeli citizen, pursuant to Israeli law, has established that she sustained physical injuries in the terrorist attack and that she is entitled to compensatory damages for her physical injuries in an amount to be determined in a future proceeding. Finally, the Israeli Plaintiffs are entitled to punitive damages under Israeli law.

Dated: Brooklyn, New York
            February 17, 2022

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for the Plaintiffs*

by: _____
    Robert J. Tolchin

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627